(No. 44531.—

HENRY L. VAUGHT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Yellow Cab Company *et al.*, Appellees.

*Opinion filed May 22, 1972.—Rehearing denied September 29, 1972.*

RYAN, J., dissenting.

ASHER, GREENFIELD, GUBBINS and SEGALL and COONEY & STENN, both of Chicago (IRVING M. GREENFIELD, JOHN J. McNICHOLS, and RICHARD O. GREENFIELD, of counsel), for appellant.

KANE, DOY & HARRINGTON, of Chicago (ROBERT E. HARRINGTON, of counsel), for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court:

The principal issue in this appeal is the determination of the proper method of ascertaining the petitioner's annual earnings under the provisions of section 10 of the Workmen's Compensation Act (Ill.Rev.Stat. 1967, ch. 48, par. 138.10) for the purpose of computing the applicable compensation rate as provided in section 8(b) of the Act. Ill.Rev.Stat. 1967, ch. 48, par. 138.8(b).

The petitioner, Henry L. Vaught, a married man with five children under the age of 18, was employed full time as a welder by General Motors Corporation. His earnings as a welder were in excess of $140 per week. In addition to

this employment, he held a regular part-time job on weekends as a cabdriver for respondent Yellow Cab Company, and had been so employed for 13 years. He worked as such cabdriver on Friday night, Saturday night and sometimes on Sunday night of each week. He had no fixed hourly wage, his earnings were in excess of $20 per day, and he worked on an average of from 2 to 3 days per week.

After a hearing on his application for compensation, the arbitrator made the following award to the petitioner: $49 per week for 143½ weeks based upon 60 weeks for disfigurement to the face, 23½ weeks for 10% loss of use of the right arm and 60 weeks for 30% loss of use of the right leg, and the further sum of $119 for necessary medical expenses.

On review, which was requested by both parties, the Industrial Commission sustained the compensation rate of $49 per week, held applicable by the arbitrator, and reduced the remainder of the award to 80 weeks based upon $49 per week for 20 weeks for the fracture of a facial bone, and $49 per week for 60 weeks for 30% loss of use of the right leg, and awarded the further sum of $1,149 for reimbursement of necessary hospital and medical expenses. The portion of the arbitrator's award for temporary total disability, for disfigurement to the face, and for permanent injury to the right arm, was set aside.

The circuit court of Cook County thereafter reversed the Commission in part. It reinstated the arbitrator's award for 9 weeks temporary total disability, set aside the Commission's award for 20 weeks for a facial fracture, restored the arbitrator's award for 60 weeks for disfigurement, and confirmed the decision of the Industrial Commission in all other respects, including its finding that the minimum compensation rate of $49 per week was applicable.

It was stipulated by the parties that the respondent,

Yellow Cab Company, operated 365 days a year; that most of its driver-employees work 5 or more days per week; that drivers who work less than 5 days per week are regarded as part-time employees; and that all driver-employees earned in excess of $20 per day.

On December 24, 1967, the petitioner was injured while driving a cab for the respondent. He received immediate emergency room care at Mt. Sinai Hospital, was X-rayed and then released by his attending physician, and was instructed to see a specialist for further medical care for his jaw, which had been fractured.

The petitioner testified that later the same day he was admitted to Little Company of Mary Hospital where he was again examined. His fractured jaw was set by wiring his mouth closed. Three teeth loosened by the accident were removed by Dr. Curth, an oral surgeon. He was given medication and blood plasma and remained hospitalized for four days. His testimony indicated no other injuries or medical treatment at that time.

Following his release from the hospital, he saw Dr. Curth at his office from time to time until he was discharged. He returned to his full-time employment with General Motors Corporation, and continued to work in that capacity.

At the arbitration hearing, the petitioner testified that he frequently had headaches, and had cramps on the right side of his face. He had then regained only 8 to 10 of the 20 pounds in weight which he had lost after the accident. Four of his teeth had been knocked out in the accident, and later three more had to be pulled. He complained of insomnia, and of trouble in the lower part of his back. He also stated that his arm, elbow and right shoulder were frequently sore and stiff when he awakened in the morning. He testified further that upon walking two or three blocks, his right leg, in the groin area, and his knee and the ankle would "just give way on me," and

sometimes he had to return by cab from a store which was located only four blocks away. He said he had none of these complaints before December 24, 1967.

On cross-examination, the petitioner admitted that five years prior to this accident an automobile in which he and his wife were riding had been struck in the rear by a bus, and that he had received "a couple of shots" for back pain, which never recurred. He also related that he had been in another automobile accident in 1952 or 1953, and that both his arm and back were hurt at that time, but that the pain which he then experienced in his back never recurred.

In addition to the petitioner's testimony, two medical reports by Dr. Michael I. Reiffel, dated January 22, 1968, and May 24, 1968, were introduced in evidence. The report of January 22 concerned an X-ray examination. It indicated evidence of fractures in the mid-region of the lower jaw, and a fracture of the vertical ramus of the right jaw. X rays of the spine indicated some scoliosis to the right and "a definite increase in the normal lordotic curvature *** rendering this lumbo sacral region unstable and sensitive to injury." The report stated further: "Traumatic aggravation here could precipitate considerable low back pain."

Dr. Reiffel's report on May 24 described his findings after re-examining the petitioner. A scar on the left side of the petitioner's face was noted which caused some distortion "on smiling and pursing of the lips." Other tests performed indicated pain in the lower lumbar area and that flexion of the spine was so restricted that the tips of the petitioner's extended fingers could only reach a distance 12 inches from the floor. Also, flexion of the right thigh was restricted to an arc of 65 degrees.

At the respondent's request, reports of medical examinations made by Drs. Leo Merkin and Carlo Scuderi were also introduced. The findings of those reports

generally substantiated the findings of the petitioner's physician.

The petitioner here primarily challenges the finding of the Industrial Commission, as confirmed by the circuit court, that his compensation must be based on the minimum compensation rate provided under the Act, rather than upon the average earnings of the cabdrivers working full time. The minimum rate in question was $49 per week and the rate based upon the average earnings of cabdrivers who were employed full time, was $76 per week. He also asserts that the Commission erred in setting aside the arbitrator's award for 10% loss of the use of his right arm.

The respondent in its cross-appeal contends that the circuit court erred in substituting the arbitrator's award of 60 weeks compensation for facial disfigurement in lieu of the Commission's award of 20 weeks compensation for the fracture of a facial bone, and in confirming the Commission's award of 30% loss of use of the right leg.

The applicable part of section 10 of the Workmen's Compensation Act (Ill.Rev.Stat. 1967, ch. 48, par. 138.10), which provides the basis for computing an employee's annual earnings, reads:

"(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.

(b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident, uninterrupted by absence from work due to illness or any other unavoidable cause.

(c) If the injured person had not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring

employments of the same kind) have earned during such period.

(d) As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation.

(e) As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of 300 as a basis for computing the annual earnings, provided the maximum number of days which shall be so used for the basis of the year's work shall be not less than 200.

(f) In the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the same line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable, then of neighboring) employments."

In determining the annual earnings of the petitioner, we must decide which paragraph of section 10 is applicable to the facts of his case. If possible, annual earnings must be determined under paragraph (a); but if they cannot be determined under paragraph (a), they must be ascertained under paragraph (c), if possible. Such earnings are determined under paragraph (d), (e) or (f) of section 10 only if they cannot be ascertained under paragraphs (a) or (c).

The respondent contends that the arbitrator was correct in applying paragraph (a) or (c) of section 10 in such manner as to determine petitioner's annual earnings on a basis consistent with his actual earnings. It asserts that the record established that the wages of a two-day-per-week-part-time employee of the respondent was in excess of $20 per day, or $40 per week, and that said sum multiplied by 52 weeks per year equals the total wage for this class of part-time drivers; namely, $2,080 per year.

The petitioner urges that his annual earnings should be computed under paragraph (c) of section 10, and that

thereunder there was only one class of employee of the respondent who was working as a cabdriver, and that all employees who worked as cabdrivers were exposed to the same risks. Therefore, he urges, that the annual earnings of a part-time cabdriver would be ascertained by computing the annual earnings of a full-time cabdriver; and that he was entitled to the maximum rate of compensation under paragraph (c). He further contends that he was entitled to such rate in any of the categories enumerated in paragraphs (d), (e) or (f) of section 10, and that paragraph (b) appropriately applies to his situation as an employee of the respondent in the grade of cabdriver. Thus, he urges that his rate of compensation should have been computed according to the annual earnings of full-time cabdrivers in the employment of the respondent.

In construing the provisions of the Workmen's Compensation Act, all portions thereof must be read as a whole and in such manner as to give to them the practical and liberal interpretation intended by the legislature. In *Ruda v. Industrial Board (1918), 283 Ill. 550,* we construed section 10 of the Act, and at pages 553 and 554, we stated: "It is a cardinal rule in construing statutes that they are to be construed so as to give effect to each word, clause and sentence, so that no word, clause or sentence shall be considered superfluous or void, [citations] and a statute should be so construed, if possible, as to give to each word and sentence its ordinary and accepted meaning."

Under such construction, it is clear that paragraph (a) of section 10 was inapplicable to the case at bar since the petitioner was not continuously employed by the respondent for a full year next preceding his accident. Paragraph (c) was also inapplicable because it includes only those employees who have not been employed for a full year, and does not embrace those who have worked part-time for more than a full year. *(K. and R. Delivery, Inc. v. Industrial Com. (1957), 11 Ill.2d 441, 445.)* The same

general rationale applies to the provisions of paragraphs (d), (e) and (f) of section 10.

After carefully reading the entire section, we conclude that the legislature failed to expressly provide a basis for computing the annual earnings of an employee who works regularly, but only on a part-time basis. Under such circumstance, we should construe the Act liberally to carry out its purpose. In *Shell Oil Co. v. Industrial Com. (1954), 2 Ill.2d 590,* at page 596, this court stated: "The Workmen's Compensation Act is a humane law of remedial nature, and wherever construction is permissible its language is to be liberally construed to effect the purpose of the act. [Citations.] The purpose of the act is that the burdens of caring for the casualties of industry should be borne by industry and not by the individuals whose misfortunes arise out of the industry, nor by the public. Every injury sustained in the course of the employee's employment, which causes a loss to the employee, should be compensable. [Citations.] "

Although cases under the Act involving the determination of the annual wage of injured employees have heretofore been before this court *(K. and R. Delivery, Inc. v. Industrial Com. (1957), 11 Ill.2d 441; Mielke v. Industrial Com. (1942), 379 Ill. 462; Puttkammer v. Industrial Com. (1939), 371 Ill. 497; Sinclair Refining Co. v. Industrial Com. (1925), 317 Ill. 541; Ruda v. Industrial Board (1918), 283 Ill. 550),* the precise question here presented appears to be one of first impression. The circumstance of holding a regular part-time job, in addition to a full-time job, is commonly known as "moonlighting." We recognize that this practice is widespread in our society, and that "moonlighting" is no novelty in Illinois.

While the legislature did not foresee the development of such a practice, we believe that the provisions of section 10 of the Act, when coupled with the intent of the legislature, are sufficiently broad to embrace the circum-

stance in which the petitioner found himself after 13 years of "moonlighting" as a cabdriver.

Moreover, we considered in *K. and R. Delivery, Inc. v. Industrial Com. (1957), 11 Ill.2d 441,* those conditions of employment which identify the temporary part-time employee so as to bring him under the provisions of paragraphs (c) and (e) of the Act. They were (1) no regular contract of employment; (2) the work was temporary in nature, and (3) the employment did not exist throughout the year, but for only a part of the total working days.

In the case at bar, it is evident that we are not confronted with temporary part-time employment, as defined in *K. and R. Delivery.* Here the work was regular on weekends; it was not intermittent; it existed throughout the year; the pay rate was the same as that paid to full-time employees; and there was no distinction whatsoever between the full-time and part-time cabdriver employees (except with reference to the number of days of employment) so as to create a separate class. They were all subject to the same risks.

We conclude, therefore, that the Industrial Commission and the circuit court were in error when they affirmed the arbitrator's award of compensation, based upon part-time annual earnings of $2,080. Under paragraph (b) of section 10, employment by the same employer means employment by that employer in the grade in which the employee was employed at the time of the accident. The only employees of the respondent in the grade in which the petitioner was employed, were cabdrivers. Paragraph (b) uses the word grade, not grades.

The petitioner's compensation rate for the period of temporary total disability should have been based upon the earnings of a full-time cabdriver at a rate in excess of $20 per day, which rate when computed on the basis of 5 days per week, and 52 weeks per year, equals an annual wage of $5,200 per year.

Under paragraph (b)2 of section 8 of the Act, the petitioner, an injured employee with four or more children, was entitled to the maximum rate of $76 per week for temporary total disability and $68 per week for permanent disability. We so hold.

The petitioner further claims that the Commission erred in setting aside the arbitrator's award for 10% loss of use of the right arm, and that the court erred in affirming the Commission in that respect.

It is well settled, however, that the Commission may alter the award made by the arbitrator. Such award becomes final only when it is entered upon the records of the Commission. The Commission is not bound by any findings of the arbitrator. *(Meade v. Industrial Com. (1971), 48 Ill.2d 215, 221; Martin Young Enterprises, Inc. v. Industrial Com. (1972), 51 Ill.2d 149.)* We find, therefore, that the petitioner's objection in this respect is without merit.

The employer asserts in his cross-appeal that the circuit court erred in setting aside the Commission's award of 20 weeks for a fracture of the jaw, and in substituting in lieu thereof the arbitrator's award of 60 weeks for facial disfigurement. The respondent's argument assumes, however, that there was only one injury to the jaw and face of the petitioner, and that the disfigurement appears over the site of the fracture. If such assumption were true, then paragraph (c) of section 8 of the Act (Ill.Rev.Stat. 1967, ch. 48, par. 138.8(c)) would preclude the payment of compensation for disfigurement where compensation was payable for a fracture under paragraphs (d), (e) or (f) of section 8. *Wargo v. Industrial Com. (1964), 31 Ill.2d 143, 145.*

However, the medical records do not indicate such circumstance. The fracture was to the right side of the jaw and the scar which disfigures the petitioner's face was on the left side. Clearly, the petitioner sustained two distinct injuries to his jaw, and compensation is properly payable

for the disfigurement under paragraph (c) of section 8, and for the fracture of the facial bone under paragraph (d). We, therefore, affirm the circuit court in restoring the arbitrator's award of 60 weeks for facial disfigurement, find that there was sufficient competent and objective evidence in the record to support the award for a fracture of the facial bone and restore the Commission's award therefor.

The respondent's final claim is that the court erred in affirming the Commission's award of 30% loss of use of the right leg, in the absence of evidence of medical treatment to that leg.

It is not required by the Act, however, that evidence of medical treatment be shown in order to recover compensation for an injury. Paragraph (b)7 of section 8 of the Act (Ill.Rev.Stat. 1967, ch. 48, par. 138.8(b)7) provides:

> "7. All compensation payments named and provided for in paragraphs (b), (c), (d), (e) and (f) of this Section, shall mean and be defined to be for accidental injuries and only such accidental injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."

Also see: *Martin Young Enterprises, Inc. v. Industrial Com.* *(1972), 51 Ill.2d 149.*

There was sufficient competent and objective evidence in the record to support the award for loss of use of the right leg. We find that the Commission's award was proper in this respect.

Accordingly, this cause is remanded to the circuit court, with directions to enter judgment in accordance with the views expressed herein.

*Affirmed in part and reversed in part*
*and remanded, with directions.*

MR. JUSTICE RYAN, dissenting.