ROBERT LESTER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ford Motor Company, Appellee).

First District (Industrial Commission Division) No. 1—92—4387WC

Opinion filed October 21, 1993.

Cronin & Peters, of Chicago (Kenneth D. Peters, of counsel), for appellant.

Ridge, Condon & Saunders, of Chicago (Yvonne D. Arvanitis, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:

The claimant, Robert Lester, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*). He sought to recover benefits for an injury which arose out of and in the course of his employment with the employer, Ford Motor Company (Ford). The arbitrator found that Lester's injury arose out of his employment and that the sustained injury caused the claimant to lose 75% of the use of his left hand. In addition, the arbitrator imposed sanctions against Ford for unreasonable delay in paying Lester's 80 weeks of compensation for the amputation of three of his fingers. The Industrial Commission

(Commission) affirmed the arbitrator's decision but modified the amount of penalties imposed. The circuit court set aside the penalty awards.

The record shows that Lester's left middle, ring, and little fingers were amputated on October 12, 1988, following a work injury. Lester returned to work on December 12, 1988. Thereafter, on March 1, 1990, Ford issued a check to Lester in payment for the amputation of his fingers. It was undisputed that an employment relationship existed between the parties at the time of the incident and that the accident arose out of and in the course of that employment relationship.

On February 5, 1991, the arbitrator found that Lester was entitled to $10^1/7$ weeks of temporary total disability and $142^1/2$ weeks of permanent partial disability. The arbitrator also found that Ford's delay of over 14 months in paying the amount owed for the amputations was unreasonable and vexatious and awarded Lester $12,540.40 in penalties under section 19(k) of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.19(k)) and $5,016.16 in attorney fees under section 16 of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.16).

The section 19(k) amount was based on the arbitrator's finding that Lester was entitled to an automatic 80 weeks of compensation at the rate of $313.51 per week. The arbitrator, pursuant to section 19(k), awarded 50% of that amount as a penalty, and, pursuant to section 16, 20% of that amount for attorney fees.

The Commission affirmed the arbitrator's decision but modified the penalty awards. It found that the amount awarded pursuant to section 19(k) should have been $10,368.25 and the amount awarded pursuant to section 16 should have been $4,147.30. It based this finding on the fact that $66^1/7$ weeks, not the full 80 weeks, had occurred when Ford tendered its payment.

The trial court set aside the penalty awards, finding that Ford could not be penalized for unreasonable delay in paying because no compensation award had been entered by the arbitrator when Ford was penalized for nonpayment. The court found that the arbitrator and the Commission erred in finding that compensation pursuant to section 8(e) of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(e)) was automatic.

On appeal, Lester argues that the trial court erred in vacating the penalty awards. He contends that since section 8(e) of the Act provides for automatic payment of compensation, Ford's 14-month delay was unreasonable and vexatious.

Our courts have apparently not previously addressed the issue of whether section 8(e) provides for automatic compensation. We note

that section provides no assistance in determining when compensation is due to the employee. As such, we must consider the rules of statutory construction to ascertain and give effect to the legislature's intent.

It is well-established law that in construing the provisions of the Workers' Compensation Act, all portions must be read as a whole and in such a manner as to give to them the practical and liberal interpretation intended by the legislature. (*Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 359 N.E.2d 125.) The purpose of the Act is to provide employees with a prompt, sure remedy for their injuries and to require that the cost of industrial accidents be borne by the industry rather than its individual members. *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1.

The section in question states in relevant part:

"For accidental injuries in the following schedule, the employee shall receive compensation for the period of temporary total incapacity for work resulting from such accidental injury, under subparagraph 1 of paragraph (b) of this Section, and shall receive in addition thereto compensation for a further period for the specific loss herein mentioned, but shall not receive any compensation under any other provisions of this Act. The following listed amounts apply to either the loss of or the permanent and complete loss of use of the member specified, such compensation for the length of time as follows:

\* \* \*

3. Second, or middle finger—35 weeks.

4. Third, or ring finger—25 weeks.

5. Fourth, or little finger—20 weeks." Ill. Rev. Stat. 1991, ch. 48, par. 138.8(e).

■ Applying the above statutory construction principles to the statute, we find that the legislature intended that individuals who receive amputations should be immediately compensated when no dispute exists as to whether the injury arose out of and in the course of employment. Such a result is consistent with the legislature's intent because prompt payment alleviates the possibility that an employee will be faced with unnecessary financial burdens. Requiring immediate payment is not unfair to the employer because statutorily it would have to pay the amount owed at some point in time. It is consistent with the purpose of the Act to require the amount owed to be paid promptly. The employer can pay the amount owed immediately since section 8(e) clearly sets forth the compensation an employer is obligated to pay. As such, it is unreasonable that an employee should have to wait for a judgment to be entered before receiving the compensation clearly owed.

■ We now turn to the question of whether the Commission erred in finding that Ford's delay in paying Lester's compensation for the loss of his fingers was unreasonable and vexatious. Ford argues that it delayed paying the amount it knew it owed because it was involved in settlement negotiations with Lester. Once the negotiations failed, it immediately tendered a check to Lester for the amount owed for the amputations.

If an employer delays paying compensation, the employer has the burden of showing that it had a reasonable belief that the delay was justified. The Commission's determination on this issue will not be disturbed on review unless it is against the manifest weight of the evidence. *Howlett's Tree Service v. Industrial Comm'n* (1987), 160 Ill. App. 3d 190, 513 N.E.2d 82.

Here, while Ford alleges that its delay of payment was reasonable, the record is devoid of any evidence showing that it was. Ford never contested the claimant's loss of the three fingers. Nor did it contest that the injury arose out of or in the course of his employment. Ford argued that it was in negotiations with Lester. Certainly, any negotiations could not have concerned the claimant's right to 80 weeks' compensation under section 8(e).

We cannot find any evidence, other than Ford's statements on appeal, that the parties were trying to negotiate a settlement. Since Ford presented no evidence to the Commission to meet its burden of proof on this issue,the Commission's decision was not against the manifest weight of the evidence.

■ The final argument on appeal is that the Commission erred in reducing the amount of penalties awarded. The Commission found that Lester was only entitled to penalties on the amount of compensation that had already accrued at the time payment was tendered by Ford. Citing *Moore v. Industrial Comm'n* (1989), 188 Ill. App. 3d 31, 543 N.E.2d 1062, Lester contends that once a penalty is imposed for failure to pay a benefit, the penalty is to be calculated on the entire amount of that type of benefit, not just the amount that had accrued prior to payment. In *Moore*, unlike the case *sub judice*, the employer did not raise the issue of credit for compensation previously paid at arbitration. Here the Commission properly calculated penalties and attorney fees based only on the amount accrued until payment was tendered. Penalties should not be based on benefits which have yet to accrue.

The Commission, pursuant to section 19(k) of the Act, awarded Lester penalties amounting to 50% of the amount owed, and, pursuant to section 16 of the Act, awarded Lester attorney fees amounting to 20% of the amount owed. These findings are supported by the evi-

dence. There is further justification for imposing penalties. In reviewing the Act, it is noted that pursuant to section 16a(F)(3), when there is no dispute to pay compensation in a timely manner or in the proper amount and there is no dispute that the accident has resulted in the amputation of a finger, the legal fees, if any, for services rendered are to be fixed by the Industrial Commission at a nominal amount, not exceeding $100. (Ill. Rev. Stat. 1991, ch. 48, par. 138.16a(F)(3).) We therefore reverse the circuit court of Cook County and reinstate the Commission's decision.

Judgment reversed; award reinstated.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD and RARICK, JJ., concur.