JOE W. KING, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (R.R. Donnelly, Appellee).

First District (Industrial Commission Division)   No. 1—97—2625WC

Opinion filed November 24, 1998.

RARICK, J., dissenting, joined by COLWELL, J.,

Gain & Gaines, of Chicago (Lewis P. Gaines, of counsel), for appellant.

Braun, Lynch, Smith & Strobel, of Chicago (Mark A. Braun, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Joe W. King appeals from an order of the circuit court of Cook County confirming the decision of the Illinois Industrial Commission (Commission). The respondent employer is R.R. Donnelly. The narrow issue presented by this case is whether, as a matter of law, section 12 of the Workers' Compensation Act (Act) (820 ILCS 305/12 (West 1996)) may be applied so as to require a claimant, for whom the Commission has made an award of permanent total disability (PTD), to attend a medical examination scheduled by respondent even though no petition pursuant to section 8(f) or 19(h) of the Act is pending.

This court rendered an opinion reversing the circuit court's order. Respondent filed a petition for rehearing, claimant filed a response, and Illinois Self-Insurers was allowed to file an *amicus* brief. We now grant the petition for rehearing, withdraw our opinion filed April 21, 1998, and by this opinion affirm the circuit court of Cook County.

On April 14, 1987, claimant filed an application for adjustment of claim alleging injuries to his right shoulder while picking up boards on July 13, 1986. On April 25, 1991, the arbitrator awarded claimant $240 per week for 154²/₇ weeks as temporary total disability and $240 per week for life for PTD. Ill. Rev. Stat. 1991, ch. 48, pars. 138.8(b), (f). The Commission affirmed and adopted the arbitrator's decision, specifically finding that claimant established that, although not altogether incapacitated for work, he was so handicapped that he would not be employed regularly in any well-known branch of the labor market. Neither party appealed.

On April 17, 1996, respondent filed a motion to suspend claimant's compensation because he failed to attend a medical examination. At the hearing on the motion to suspend compensation conducted before Commissioner Richard Gilgas on June 18, 1996, respondent submitted a copy of an October 18, 1995, letter from respondent's attorney, Mark Braun, to claimant's attorney, Lewis Gaines, notifying Gaines that an appointment for a general physical examination of claimant by Dr. George Cooper was scheduled for 11:30 a.m. on November 7, 1995. The doctor's address and telephone number were provided in the letter, and a $20 check to defray claimant's costs for transportation was enclosed. Also submitted by respondent was a November 21, 1995, letter from Braun to Gaines indicating respondent had set up an appointment for claimant to be seen by Cooper. Claimant did not show for the appointment, and respondent did not have notice from claimant's attorney offering a reason for the cancellation. Braun asked Gaines to call the doctor's office and arrange for an appointment convenient to claimant.

Braun indicated to the Commissioner that he attempted to contact Gaines by telephone on December 5, 1995, and April 13, 1996. Gaines advised Braun that he felt claimant was not required to comply.

Gaines acknowledged receiving correspondence from respondent with regard to claimant submitting to a physical examination. He also conceded receiving the telephone call from Braun. In addition to the two letters tendered by respondent, claimant submitted a copy of a July 21, 1995, letter from Braun to Gaines notifying Gaines of a 10:15 a.m. appointment on July 26, 1996, for claimant to be physically examined by Dr. Bernard Bach. The doctor's address and telephone number were provided, and a $15 check for transportation expense

was enclosed. There was another letter from Braun to Gaines, dated December 13, 1995, stating the Act permitted periodic examination, indicating no response from Gaines to Braun's attempts to arrange appointments, and requesting a response from Gaines.

The Commission denied the motion to suspend compensation, but ordered claimant to submit himself to an "independent" medical examination pursuant to section 12 of the Act (820 ILCS 305/12 (West 1996)).

Respondent has not appealed or cross-appealed the decision of the Commission to deny suspension of compensation. 820 ILCS 305/19(f)(2) (West 1996); 155 Ill. 2d Rs. 303(a)(1), (a)(3). As a result, the issue of whether the Commission erred in refusing to suspend compensation will not be considered. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 14, 653 N.E.2d 968, 970 (1995).

■ Section 8(f) provides, in relevant part:

"(f) In case of complete disability, which renders the employee wholly and permanently incapable of work, or in the specific case of total and permanent disability as provided in subparagraph 18 of paragraph (e) of this Section, compensation shall be payable at the rate provided in subparagraph 2 of paragraph (b) of this Section for life.

An employee entitled to benefits under paragraph (f) of this Section shall also be entitled to receive from the Rate Adjustment Fund provided in paragraph (f) of Section 7 of the supplementary benefits provided in paragraph (g) of this Section 8.

If any employee who receives an award under this paragraph afterwards returns to work or is able to do so, and earns or is able to earn as much as before the accident, payments under such award shall cease. If such employee returns to work, or is able to do so, and earns or is able to earn part but not as much as before the accident, such award shall be modified so as to conform to an award under paragraph (d) of this Section. If such award is terminated or reduced under the provisions of this paragraph, such employees have the right at any time within 30 months after the date of such termination or reduction to file petition with the Commission for the purpose of determining whether any disability exists as a result of the original accidental injury and the extent thereof." 820 ILCS 305/8(f) (West 1996).

Section 12 provides, in relevant part:

"An employee entitled to receive disability payments shall be required, if requested by the employer, to submit himself, at the expense of the employer, for examination to a duly qualified medical practitioner or surgeon selected by the employer, at any time and place reasonably convenient for the employee, either within or

without the State of Illinois, for the purpose of determining the nature, extent and probable duration of the injury received by the employee, and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act. An employee may also be required to submit himself for examination by medical experts under subsection (c) of Section 19.

\* \* \*

If the employee refuses so to submit himself to examination or unnecessarily obstructs the same, his right to compensation payments shall be temporarily suspended until such examination shall have taken place, and no compensation shall be payable under this Act for such period." 820 ILCS 305/12 (West 1996).

■ Statutory construction is a question of law. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995). In cases involving the interpretation of a statute by an agency charged with administering it, the agency's interpretation is afforded considerable deference, but it is not binding on the court and will be rejected if erroneous. *Denton v. Civil Service Comm'n*, 176 Ill. 2d 144, 148, 679 N.E.2d 1234, 1236 (1997). This court considers the question *de novo*. *Branson*, 168 Ill. 2d at 254, 659 N.E.2d at 965.

"The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature, which is best evidenced by the clear and unambiguous language of the statute. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990). All portions of the Act must be read as a whole and in such a manner as to give them the practical and liberal interpretation intended by the legislature. *Vaught v. Industrial Comm'n*, 52 Ill. 2d 158, 165, 287 N.E.2d 701, 705 (1972). The purpose of the Act is to provide employees with a prompt, sure remedy for their injuries and to require that the cost of industrial accidents be borne by the industry rather than by its individual members. *Lester v. Industrial Comm'n*, 256 Ill. App. 3d 520, 523, 628 N.E.2d 191, 193 (1993)." *Modern Drop Forge Corp. v. Industrial Comm'n*, 284 Ill. App. 3d 259, 264, 671 N.E.2d 753, 756 (1996).

The words of a statute are given their plain and commonly understood meanings. *Forest City Erectors v. Industrial Comm'n*, 264 Ill. App. 3d 436, 439, 636 N.E.2d 969, 972 (1994). Only when the meaning of the enactment is unclear from the statutory language will the court look beyond the language and resort to aids for construction. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994); *County of St. Clair v. Industrial Comm'n*, 380 Ill. 376, 379, 44 N.E.2d 30, 31 (1942).

■ Respondent has cited no cases and this court has not found any

cases in which section 12 has been applied to allow a respondent to require an examination after the final decision of an award has been made by the Commission. A request for claimant to submit to an examination may be made prior to or at the time of the hearing before the arbitrator (see, *e.g., Hafer Washed Coal Co. v. Industrial Comm'n,* 293 Ill. 425, 428-29, 127 N.E. 752, 753 (1920); *Fencl-Tufo Chevrolet, Inc. v. Industrial Comm'n,* 169 Ill. App. 3d 510, 515-16, 523 N.E.2d 926, 930-31 (1988)) or, when the Commission was allowed to hear additional evidence, after the arbitrator's award but before review by the Commission (*Jackson Coal Co. v. Industrial Comm'n,* 295 Ill. 18, 18-21, 128 N.E. 813, 813-14 (1920); *Fuller v. Industrial Comm'n,* 86 Ill. 2d 131, 133-34, 427 N.E.2d 68, 68-69 (1981)). In *Paradise Coal Co. v. Industrial Comm'n,* 301 Ill. 504, 507, 134 N.E. 167, 168 (1922), the Supreme Court of Illinois stated that an employer may request the claimant to submit to a physical examination *before* claimant's entitlement to compensation had been determined by the arbitrator.

The right of the respondent to request an examination under section 12 is independent of any current employer and employee relationship. *Skelgas Co. v. Industrial Comm'n,* 400 Ill. 322, 328-29, 79 N.E.2d 501, 504 (1948). The failure to comply with a request to submit to employer-provided medical treatment does not result in termination of the employment relationship but "in the suspension or reduction of an award of compensation benefits." *Lee v. Industrial Comm'n,* 167 Ill. 2d 77, 85, 656 N.E.2d 1084, 1088 (1995), citing 820 ILCS 305/12 (West 1992).

Claimant argues that the order that claimant submit to a physical examination is not authorized by section 12 of the Act because section 12 specifically refers to section 19(c) of the Act, which allows for an impartial physical or mental examination by a physician chosen by the Commission in advance of and in connection with hearings under section 19(e) (any hearing before the Commission) or section 19(h) (hearing to reestablish, increase, diminish, or terminate compensation payments) of the Act. The record does not disclose that any proceedings, other than the motion which is the subject of this appeal, have yet been initiated by respondent. Claimant also notes that section 12 refers to the purpose of the examination being to determine the nature, extent, and probable duration of the injury. However, section 12 also states the purpose of such a medical examination may be "for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act" (820 ILCS 305/12 (West 1996)). In addition, section 8(f) provides a method whereby the Commission may discontinue PTD payments if the employee is shown to be able to return to work,

even if he has not done so. The question of whether a section 12 examination is appropriate as a vehicle through which a determination could be made regarding whether claimant is able to return to work pursuant to section 8(f) is not before this court. The respondent's letters to the claimant through his attorney merely made a section 12 appointment for examination. No other proceedings were pending before the Commission.

Although section 12 does not expressly limit the respondent's right to request an examination "prior to a determination of an award," claimant argues this condition would seem to be implicit in the phrase "determining the nature, extent and probable duration of the injury received by the employee." 820 ILCS 305/12 (West 1996). But section 12, as to the examination, also provides "for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act." 820 ILCS 305/12 (West 1996). Although we previously determined that under the facts of this case respondent could not invoke section 12 of the Act, upon further review of the petition for rehearing, the claimant's response, and the *amicus* brief, we affirm the judgment of the circuit court and the decision of the Commission.

Here, the respondent did not unilaterally terminate benefits because of claimant's refusal to submit to a section 12 examination. It properly filed a petition to terminate benefits and continued to pay claimant's award.

In further consideration of possible harassment in similar cases, as well as potential costs and fees, the requirement that a section 8(f) petition be filed prior to a section 12 request would subject claims, as well as respondents, to costs and attorney fees. To deny the section 12 examination in the context of a section 8(f) award, as happened here, would also increase unnecessarily the Commission case load.

Additionally, requiring a section 8(f) or 19(h) petition to be filed first may very well subject a respondent to sanctions if the examination results are not favorable to its position. Claimant is not left without recourse if respondent's request is found to be vexatious or unreasonable. The claimant has the protections of the Act. The *amicus* suggests sections 4(c) and 4(h) of the Act (820 ILCS 305/4(c), (h) (West 1996)) provide protection to claimant. Sections 16 and 19(k) of the Act apply where the respondent "has been guilty of delay or unfairness towards an employee" (820 ILCS 305/16 (West 1996)) or where "proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay" (820 ILCS 305/19(k) (West 1996)). We need not and do not by this decision decide the application of these sections in such circumstances.

In affirming the circuit court and commission, we have considered the sage saying, "If it ain't broke, don't fix it."

For the foregoing reasons, the judgment of the circuit court of Cook County and the decision of the Commission are affirmed.

Affirmed.

RAKOWSKI and HOLDRIDGE, JJ., concur.

JUSTICE RARICK, dissenting:

In its November 13, 1991, decision, the Commission affirmed and adopted the decision of the arbitrator, specifically finding that King had established that he fell into the "odd-lot" category and was permanently and totally disabled. The Commission found that King was a 59-year-old unskilled laborer with a third-grade education. (He is now 66 years old.) His rehabilitation report stated that he was functionally illiterate and had made a diligent but unsuccessful job search. The Commission also noted that King's attempt at vocational rehabilitation was unsuccessful and that King's employer, R.R. Donnelly, failed to demonstrate the availability of a reasonably stable job market for a person in King's circumstances.

Given the facts of this case, I believe that having King submit to a medical exam would serve no meaningful purpose and that the Commission abused its discretion in so ordering. Permanent and total disability under the odd-lot doctrine is not simply a matter of physical impairment but, rather, depends on the relationship between the claimant's physical impairment and his age, education, training, and work experience. A finding of permanent and total disability under the odd-lot doctrine is a determination that, because of the relationship between these factors, the claimant is essentially unemployable. A showing of a change in physical condition would not be meaningful absent a showing of how this change impacts, and is impacted by, the other factors. I would hold that to be entitled to require the employee to submit to a section 12 medical exam, the employer must make some minimal showing that there is reason to believe that the employee's physical condition has changed and that this change, in relation to the other factors, renders the employee employable. In the present case, all of the other factors militated very strongly in favor of permanent and total disability, and there is no indication that any of them have changed. The employer has made no showing that there is reason to believe that King's physical condition has improved, nor is there any showing that the alleged improved condition, in light of the other factors, is such that work would now be available to a person in his circumstances.

966

For the foregoing reasons, I dissent.

COLWELL, J., joins this dissent.