3 November 1999

NO. 5-98-0653WC

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

INDUSTRIAL COMMISSION DIVISION

___________________________________________________________________________

FREEMAN UNITED COAL MINING COMPANY, ) Appeal from the

) Circuit Court of

Appellant, ) Williamson County.  

)

v. ) No. 98-MR-34

)

THE INDUSTRIAL COMMISSION 
et al.
 ) Honorable

(Helen Mallaburn, Widow of Leslie Mallaburn, ) William H. Wilson, 

Deceased, Appellee). ) Judge, presiding.  

___________________________________________________________________________

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent employer Freeman United Coal Mining Company appeals from an order of the circuit court of Williamson County confirming a decision of the Illinois Industrial Commission (Commission).  The Commission affirmed and adopted the decision of the arbitrator.  The arbitrator awarded claimant Helen Mallaburn, widow of Leslie Mallaburn, deceased, $231.84 per week beginning July 29, 1990, the date of her husband's death, and continuing.  820 ILCS 305/7(a), 310/7 (West 1996).

The issues are whether (1) the Commission improperly admitted into evidence decedent's death certificate, the pathology report of Dr. Miles Jones, and the testimony of Dr. Mina Gabrawy;  (2) as a matter of law, this claim is barred by section 1(f) of the Workers' Occupational Diseases Act (Act) (820 ILCS 310/1(f) (West 1996)); and (3) the Commission's finding that the death was causally related to an exposure to an occupational disease was against the manifest weight of the evidence.  We affirm.  Only those facts necessary to an understanding of this court's disposition will be discussed.

On July 29, 1990, the employee's date of death, an autopsy was performed at claimant's request, without notice to respondent employer.  Over respondent employer's objection, the Commission admitted into evidence decedent's death certificate, the pathology report of Dr. Miles Jones, and the testimony of Dr. Mina Gabrawy.

Section 12(b) of the Act states:

 "Whenever, after the death of an employee, any party in interest files an application for adjustment of claim under this Act, and it appears that an autopsy may disclose material evidence as to whether or not such death was due to the inhalation of silica or asbestos dust, the commission, upon petition of either party, may order an autopsy at the expense of the party requesting same, and if such autopsy is so ordered, the commission shall designate a competent pathologist to perform the same, and shall give the parties in interest such reasonable notice of the time and place thereof as will afford a reasonable opportunity to witness such autopsy in person or by a representative.

It shall be the duty of such pathologist to perform such autopsy as, in his best judgment, is required to ascertain the cause of death.  Such pathologist shall make a complete written report of all his findings to the commission (including laboratory results described as such, if any).  The said report of the pathologist shall contain his findings on post-mortem examination and said report shall not contain any conclusion of the said pathologist based upon the findings so reported.

Said report shall be placed on file with the commission, and shall be a public record.  Said report, or a certified copy thereof, may be introduced by either party on any hearing as evidence of the findings therein stated, but shall not be conclusive evidence of such findings, and either party may rebut any part thereof.

Where an autopsy has been performed at any time with the express or implied consent of any interested party, and without some opposing party, if known or reasonably ascertainable, having reasonable notice of and reasonable opportunity of witnessing the same, all evidence obtained by such autopsy shall be barred upon objection at any hearing.  This paragraph shall not apply to autopsies by a coroner's physician in the discharge of his official duties."  820 ILCS 310/12(b) (West 1996).

In 
King v. Industrial Comm'n
, 301 Ill. App. 3d 958, 962, 704 N.E.2d 715, 718 (1998), 
appeal allowed
, 184 Ill. 2d 558, 714 N.E.2d 527 (1999), this court stated with regard to the Workers' Compensation Act (820 ILCS 305/1 
et seq.
 (West 1996)) as follows:

"Statutory construction is a question of law.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995).  In cases involving the interpretation of a statute by an agency charged with administering it, the agency's interpretation is afforded considerable deference, but it is not binding on the court and will be rejected if erroneous.  
Denton v. Civil Service Comm'n
, 176 Ill. 2d 144, 148, 679 N.E.2d 1234, 1236 (1997).  This court considers the question 
de novo
.  
Branson
, 168 Ill. 2d at 254, 659 N.E.2d at 965.

'The primary goal of statutory interpre­tation is to ascertain and give effect to the intent of the legislature, which is best evidenced by the clear and unambiguous lan­guage of the statute.  
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990).  All portions of the Act must be read as a whole and in such a manner as to give them the practical and liberal interpretation intended by the legislature.  
Vaught v. Indu­strial Comm'n
, 52 Ill. 2d 158, 165, 287 N.E.2d 701, 705 (1972).  The purpose of the Act is to provide employees with a prompt, sure remedy for their injuries and to require that the cost of industrial accidents be borne by the industry rather than by its individual mem­bers.  
Lester v. Industrial Comm'n
, 256 Ill. App. 3d 520, 523, 628 N.E.2d 191, 193 (1993).'  
Modern Drop Forge Corp. v. Industrial Comm'n
, 284 Ill. App. 3d 259, 264, 671 N.E.2d 753, 756 (1996)."

The first paragraph of section 12(b) of the Act relates to when the Commission may order an autopsy, 
i.e.
, "it appears that an autopsy may disclose material evidence as to whether or not such death was due to the inhalation of silica or asbestos dust" and one party petitioned for an autopsy.  820 ILCS 310/12(b) (West 1996).  Paragraph two of section 12(b) states "such pathologist" is required to ascertain the cause of death and make a complete report.  820 ILCS 310/12(b) (West 1996).  "Such pathologist" refers to the pathologist appointed by the Commission in paragraph one of section 12(b).  820 ILCS 310/12(b) (West 1996).  The second sentence of paragraph two of section 12(b) refers to "the said report of the pathologist," and paragraph three of section 12(b) also refers to "said report" in both of its sentences.  820 ILCS 310/12(b) (West 1996).  Therefore, the first three paragraphs of section 12(b) clearly apply to the same subject and limit the autopsy to the situation where the Commission has appointed the pathologist to determine the cause of death.  Paragraph four, however, does not refer to the autopsy by "such pathologist" or the admissibility of "said report."  Obviously, if an autopsy is ordered by the Commission upon petition by one of the parties, then the circumstances arising in paragraph four of section 12(b) would never occur.  Therefore, by its language, logic, and common sense, paragraph four relates to a somewhat different subject than the first three paragraphs of section 12(b).

Paragraph four of section 12(b) expressly applies to autopsies "performed at 
any time
 with the express or implied consent of any interested party."  (Emphasis added.)  820 ILCS 310/12(b) (West 1996).  This language distinguishes these types of autopsies from the Commission-ordered autopsies.  We agree with the interpretation of the Commission that the "autopsy" referred to in paragraph four refers to autopsies for determining whether death was due to inhalation of silica or asbestos dust. 820 ILCS 310/12(b) (West 1996).  If the legislature intended a different result, it could have set paragraph four off as a separate subsection, thereby evidencing a complete change in subject matter.

Respondent argues no referential and qualifying words or phrases in paragraph four to demonstrate a legislative intent to limit its application to silica- and asbestos-dust cases.  However, paragraph four is to be construed in light of the Act's purpose, which is the same as the previously quoted purpose of the Workers' Compensation Act.  
General American Life Insurance Co. v. Industrial Comm'n
, 97 Ill. 2d 359, 370, 454 N.E.2d 643, 649 (1983) (the Workers' Compensation Act is to be liberally construed to effectuate its purpose). 

The statute is read as a whole, and its parts should be construed harmoniously.  2A N. Singer, Sutherland on Statutory Construction §46.05, at 103 (5th
 ed. 1992) (hereinafter Sutherland).  The same would be true for paragraphs within a subsection.  Respondent spends a great deal of time in its brief arguing that the rule of statutory construction 
ejusdem generis
 does not apply.  We agree.  
Ejusdem generis
 is a variant of the maxim 
noscitur a sociis
 and is applied when general words follow specific words in a statutory enumeration.  2A Sutherland §47.17, at 188.  That does not occur in section 12(b).  The terms employed should be viewed in context.  

All prior paragraphs relate to the subject of autopsies performed to determine whether death was due to inhalation of silica or asbestos dust.  It is not unreasonable for the Commission to determine that the term "autopsy" in paragraph four is also so limited or that the phrase "at any time" refers only to occasions when no petition to order an autopsy has been filed with the Commission.  820 ILCS 310/12(b) (West 1996).

Respondent also argues that the principle of statutory construction 
expressio unius est exclusio alterius
 (the expression of one is the exclusion of another) demonstrates that paragraph one was limited, but paragraph four was not so limited.  See 2A Sutherland §§47.23 through 47.25, at 216-40.  That analysis, however, violates the principle that the subsection is to be construed as a harmonious whole.  Respondent is interpreting paragraphs separately.  Again, had the legislature intended to change the subject from autopsies performed to determine if inhalation of silica or asbestos dust was the cause of death, it could have created another subsection.

The Commission provided an additional rationale, that the evidence derived from the autopsy was admissible because no litigation was pending at the time of the autopsy.  The determination of this question seems to turn on when the opposing party is "known or reasonably ascertainable."  820 ILCS 310/12(b) (West 1996) (paragraph four thereof).  Paragraph four does not expressly require that litigation be pending at the time of the autopsy.  Indeed, the last sentence of paragraph four indicates official autopsies of coroners are excepted from the rule announced in the first sentence of paragraph four.  The tenor of the language in the first sentence of paragraph four does apply to situations when litigation is or may be contemplated at the time the autopsy is authorized by one of the parties.  If the litigation was in fact pending, the language "reasonably ascertainable" modifying the term "party" would seem to be unnecessary and meaningless.  820 ILCS 310/12(b) (West 1996) (paragraph four).  Having already decided that the fourth paragraph of section 12(b) applies only to autopsies to determine whether death resulted from inhalation of silica or asbestos dust, we need not determine the correctness of the Commission's limiting the application of the first sentence of paragraph four of section 12(b) to the situation where the autopsy was performed after litigation is commenced.  

Deference is given to the Commission's interpretation of the statute.  The Commission did not err in ruling that section 12(b) of the Act did not prevent the admission into evidence of the evidence derived from the autopsy of decedent.

The next issue is whether, as a matter of law, this claim is barred by section 1(f) of the Act (820 ILCS 310/1(f) (West 1996)).  Sections 1(e) and 1(f) of the Act provide as follows:

"(e) 'Disablement' means an impairment or partial impairment, temporary or permanent, in the function of the body or any of the members of the body; or the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he or she claims compensation, or equal wages in other suitable employment; and 'disability' means the state of being so incapacitated.

(f) No compensation shall be payable for or on account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease, except in cases of occupational disease caused by berylliosis or by the inhalation of silica dust or asbestos dust and, in such cases, within 3 years after the last day of the last exposure to the hazards of such disease and except in the case of occupational disease caused by exposure to radiological materials or equipment, and in such case, within 25 years after the last day of last exposure to the hazards of such disease."  820 ILCS 310/1(e), (f) (West 1996).

This court has determined that section 1(f) applies to a claim for death benefits by a survivor of a deceased worker.  
Goodson v. Industrial Comm'n
, 190 Ill. App. 3d 16, 19, 545 N.E.2d 975, 977 (1989).

The parties do not discuss whether or how the following paragraph of section 1(d) comes into play:

"If a deceased miner was employed for 10 years or more in one or more coal mines and died from a respirable disease there shall, effective July 1, 1973, be a rebuttable presumption that his or her death was due to pneumoconiosis."  820 ILCS 310/1(d) (West 1996).

The entire statute is to be examined for guidance as to the legislature's intent.  
Hansen v. Caring Professionals, Inc.
, 286 Ill. App. 3d 797, 802, 676 N.E.2d 1349, 1352-53 (1997).

For the case to be within the limitations period, a partial impairment of decedent must have manifested itself within two years after the last exposure to coal dust.  He retired on January 30, 1976.  Dr. David M. Main, respondent's evaluating physician, testified that (1) there was no reason to dispute the findings of the autopsy and (2) if decedent had coal worker's pneumoconiosis (CWP) on the day he died, he had it on the date of last exposure.  Main did say he did not believe that decedent had CWP based on the chest X-ray reports he reviewed, but he also conceded that the autopsy was a better method of determining the presence of CWP.

Unless the facts are undisputed, no issue of credibility exists, and only one inference can be drawn from the undisputed facts, the questions of whether the applicable statute of limitations had begun to run and the timeliness of the action are questions of fact.  See 
Golla v. General Motor Corp.
, 167 Ill. 2d 353, 358-59, 657 N.E.2d 894, 897 (1995) (if only one conclusion can be drawn from undisputed facts, timeliness of complaint becomes a question of law); 
Federal Signal Corp. v. Thorn Automated Systems, Inc.
, 295 Ill. App. 3d 762, 767, 693 N.E.2d 418, 421 (1998).  The Commission's determination of questions of fact will not be reversed unless they are against the manifest weight of the evidence.  
Williams v. Industrial Comm'n
, 216 Ill. App. 3d 536, 539, 576 N.E.2d 383, 385 (1991).  "The test is not whether this or any other tribunal might reach the opposite conclusion, but whether there was sufficient factual evidence in the record to support the Commission's determination."  
Beattie v. Industrial Comm'n
, 276 Ill. App. 3d 446, 450, 657 N.E.2d 1196, 1199 (1995).  In this case, there was sufficient evidence from which the Commission could reasonably infer that decedent had CWP and was disabled within two years of his last exposure.

The final issue is whether the Commission's finding that the death was causally related to an exposure to an occupational disease was against the manifest weight of the evidence.  The existence of a causal connection between the occupationally related disease and the current condition of ill-being, in this case death, is also a question of fact.  See 
Cassens Transport Co. v. Industrial Comm'n
, 262 Ill. App. 3d 324, 331, 633 N.E.2d 1344, 1349 (1994).  Gabrawy stated an opinion that the death was causally related to decedent's CWP and emphysema.  She based that opinion on the death certificate and the autopsy report disclosing the presence of CWP.  While Main testified he did not believe that decedent had CWP, it is the function of the Commission to resolve conflicts in the medical testimony.  
McRae v. Industrial Comm'n
, 285 Ill. App. 3d 448, 451, 674 N.E.2d 512, 514 (1996); 
Lenhardt Tool & Die Co. v. Industrial Comm'n
, 232 Ill. App. 3d 693, 696, 597 N.E.2d 1256, 1258 (1992).  This court will not substitute its judgment for that of the Commission simply because other reasonable inferences could have been drawn from the evidence.  
Lasley Construction Co. v. Industrial Comm'n
, 274 Ill. App. 3d 890, 893, 655 N.E.2d 5, 8 (1995).

Following the autopsy, Jones reported that decedent suffered from severe chronic obstructive pulmonary disease complicated by acute respiratory infection leading to death from respiratory failure.  There was purulent mucoid buildup within the pulmonary airways.  According to Gabrawy, the emphysema and CWP negatively affected claimant's ability to recover from the acute pneumonia.  Gabrawy concluded that the occupationally related lung diseases were a contributing cause of decedent's death.

The death is compensable if decedent's employment was a causative factor.  It need not be the sole, or even principal, causative factor.  
Sears, Roebuck & Co. v. Industrial Comm'n
, 79 Ill. 2d 59, 66, 402 N.E.2d 231, 235 (1980).  As long as occupational activity was a causative factor in hastening the death, it is compensable.  
Proctor Community Hospital v. Industrial Comm'n
, 41 Ill. 2d 537, 542, 244 N.E.2d 155, 158 (1969).  "'To hasten death is to cause it.'"  1 A. Larson & L. Larson, Larson's Workers' Compensation §12.26, at 3-118-19 (desk ed. 1999), quoting 
Avignone Freres, Inc. v. Cardillo
, 73 App. D.C. 149, 150, 117 F.2d 385, 386 (D.C. App. 1940).  The finding of a causal connection was not against the manifest weight of the evidence.

The judgment of the circuit court of Williamson County confirming the Commission's decision is affirmed.

Affirmed.

RAKOWSKI, COLWELL, HOLDRIDGE, and RARICK, JJ., concur.