(No. 80712.—

STEPHEN L. DENTON, Appellee, v. THE CIVIL SERVICE COMMISSION OF THE STATE OF ILLINOIS *et al.*, Appellants.

*Opinion filed April 24, 1997.*

MILLER, J., joined by FREEMAN and McMORROW, JJ., dissenting.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellants.

Mary Lee Leahy and Cheryl Redfield Jansen, of Leahy Law Offices, of Springfield, for appellee.

Samuel J. Cahnman, of Springfield, and Richard J. Phelan, of Chicago, for *amici curiae* Veteran's Legal Defense Fund *et al.*

CHIEF JUSTICE HEIPLE delivered the opinion of the court:

The issue before this court is whether section 8b.7(f) of the Personnel Code (20 ILCS 415/8b.7(f) (West 1992)) affords veterans an absolute hiring preference over non-veterans within the same grade category. The Civil Ser-

vice Commission (the Commission) and the circuit court determined that section 8b.7(f)'s hiring preference was not absolute. The appellate court disagreed, holding that section 8b.7(f) does indeed grant veterans an absolute hiring preference over nonveterans of the same grade category. 277 Ill. App. 3d 770. This court granted leave to appeal (155 Ill. 2d R. 315), and, for the reasons which follow, we affirm the appellate court.

Appellee, Stephen L. Denton, served in the United States Army from December 1965 until he was honorably discharged in December 1968. On June 12, 1991, Denton submitted an application to the Illinois Department of Central Management Services (CMS), seeking employment for an open "Executive IV" position. Denton indicated on the application that he was eligible for a veteran's preference. On July 10, 1991, Denton received notice from CMS that his application had been graded and that he had been given a category grade of "A," the highest grade possible. Denton was also notified that his name and grade had been placed on a CMS eligibility list requested by the Illinois State Police.

On August 27, 1991, Denton joined 13 veterans and three nonveterans who interviewed for the Executive IV position of assistant bureau chief in the Drug Abuse Resistance Education (D.A.R.E.) program. With the approval of CMS, however, the State Police hired a nonveteran, namely, Linda Lang. Lang, like Denton, had also been given a category grade of "A." After receiving a letter from the State Police informing him that he had not been chosen, Denton wrote to the Commission contending that the failure to hire him violated section 302.30(c)(3) of Title 80 of the Administrative Code.[1] This section provides that "[i]f category ratings are used, the

_____

[1]Section 302.30(c)(3) of Title 80 of the Administrative Code is part of a program designed to satisfy the requirements and standards imposed by section 8b.7 of the Personnel Code.

veteran eligibles in each category shall be preferred for appointment before the nonveteran eligibles in the same category." 80 Ill. Adm. Code § 302.30(c)(3) (1990) (identical language now at 80 Ill. Adm. Code § 302.30(d) (1996)). The Commission staff responded by letter that Lang's overall credentials were superior to those of all the other candidates. The Commission staff's letter further explained that section 302.30(c)(3) of the personnel rules had been interpreted to permit an agency to bypass a veteran only when the qualifications of the nonveteran eligible were superior to the bypassed veteran eligibles. Having thus found no violation of the personnel rules or the Personnel Code, the Commission staff notified Denton that if adopted by the Commission, the staff's determination would become a final administrative decision.

Denton thereafter asserted by letter that section 8b.7 of the Personnel Code had been violated when he or another qualified veteran was not appointed to the Executive IV position with the State Police. See Ill. Rev. Stat. 1991, ch. 127, par. 63b108b.7 (now codified as 20 ILCS 415/8b.7 (West 1992)). Nevertheless, the Commission rendered a final administrative decision by adopting its staff's findings on May 13, 1992.

Denton subsequently filed a complaint for administrative review in the circuit court of Sangamon County on June 17, 1992, against the Commission, including Executive Secretary Bruce J. Finne and Commissioners J.J. Moffat, William G. Stratton, and Harry Conlon; the State Police, including Director Terrance W. Gainer; and CMS, including Director Stephen B. Schnorf.[2] The circuit court affirmed, holding that a veteran may be bypassed for employment in favor of a more qualified nonveteran. Denton appealed. The appellate court reversed, holding that section 8b.7(f) of the Personnel Code

---

[2]For purposes of this appeal, we refer to defendants/appellants jointly as the Commission.

grants veterans an absolute hiring preference over non-veterans within the same grade category. 277 Ill. App. 3d 770.

## ANALYSIS

The sole issue on appeal is whether section 8b.7(f) of the Personnel Code guarantees veterans an absolute hiring preference over nonveterans of the same grade category. Section 8b.7(f) provides:

> "The rank order of persons entitled to a preference on eligible lists shall be determined on the basis of their augmented ratings. *When the Director [of CMS] establishes eligible lists on the basis of category ratings such as 'superior', 'excellent', 'well-qualified', and 'qualified', the veteran eligibles in each such category shall be preferred for appointment before the non-veteran eligibles in the same category.*" (Emphasis added.) 20 ILCS 415/8b.7(f) (West 1992).

The Commission contends that the above-emphasized portion of section 8b.7(f) provides an absolute hiring preference only in situations where the veteran and nonveteran of the same grade category are equally qualified. Denton counters that the emphasized portion of section 8b.7(f) unambiguously mandates an absolute hiring preference for veterans in the same grade category as nonveterans.

While courts afford considerable deference to an agency's interpretation of a statute it administers, an agency's determination is not binding as to questions of law and will be rejected if erroneous. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361 (1988). Indeed, the primary rule in statutory construction is to give effect to legislative intent as evidenced by the language of the statute. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994). Words in the statute should be given their popularly understood meaning (*Kozak v. Retirement*

*Board of the Firemen's Annuity & Benefit Fund*, 95 Ill.
2d 211, 215 (1983)), and only where the statutory
language is unclear may a court look beyond it (*Solich*,
158 Ill. 2d at 81).

As well as contending that the language of section
8b.7(f) does not provide veterans with an absolute hiring
preference over more qualified nonveterans in the same
grade category, the Commission further argues that the
emphasized portion of section 8b.7(f) is satisfied by
procedures CMS has developed to favor veterans over
nonveterans in the hiring process. These CMS proce-
dures require that the employing agency interview and
consider veterans of a given category before nonveter-
ans of the same category; that the employing agency
request CMS approval before selecting a nonveteran
over available veterans; and that veterans, upon request,
receive a written explanation of the reasons why an-
other candidate was selected. The Commission argues
that these procedures satisfy section 8b.7(f) in that they
reflect a reasonable interpretation of the veteran's pref-
erence provision.

The appellate court held that CMS's failure to re-
cord these procedures in the administrative code renders
them invalid. See 5 ILCS 100/1—70 (West 1992); *Senn
Park Nursing Center v. Miller*, 104 Ill. 2d 169, 181 (1984)
(holding that when an agency fails to follow the proper
procedure under the Illinois Administrative Procedure
Act for the adoption of rules, the rule is invalid). Our in-
terpretation of section 8b.7(f), however, obviates the
need to reach this issue.

While all the parties concede that the CMS proce-
dures grant veterans preferential treatment in the hir-
ing process, the relevant question is whether these
procedures, even if valid, satisfy section 8b.7(f), which
requires that the "veteran eligibles in each such cate-
gory shall be preferred for appointment before the non-

veteran eligibles in the same category." The term "preferred" means "[p]ossessing or accorded a priority, advantage, or privilege." Black's Law Dictionary 1178 (6th ed. 1990). Admittedly, interviewing and considering veterans before nonveterans and permitting veterans to question an agency's decision to hire a nonveteran over veterans grant veterans an advantage. But an advantage is not what section 8b.7(f) calls for; rather, it mandates appointment.

Because there is no value in a "prefer[ence] for appointment" that does not result in appointment, we conclude that the unambiguous language of the statute requires that veterans receive an absolute preference in being hired over nonveterans of the same grade category. In other words, when the Director of CMS chooses to organize eligibility lists on the basis of category ratings, a veteran must receive an offer for the job before nonveterans of the same grade category. Accordingly, to the extent that the CMS hiring procedures do not afford an absolute hiring preference as mandated by section 8b.7(f), they are insufficient.

The Commission argues that so interpreting section 8b.7(f) improperly diminishes the employing agency's role in the selection process and further undermines the merit principles upon which the Personnel Code is based. In support of this argument, the Commission points out that Denton's "A" grade indicated only that he met the minimum qualifications for Executive IV positions and not that he was as qualified as Lang for the D.A.R.E. position.

It is, however, for the legislature to decide whether and to what extent state agencies should be constrained in their employment decisions. Indeed, the Personnel Code requires CMS, not the employing agency, to establish a position classification plan for all positions governed by the Personnel Code (20 ILCS 415/8a (West

1994)); to eliminate those who are not qualified for entrance into state service and to discover the relative fitness of those who are qualified (20 ILCS 415/8b.1 (West 1992)); and to establish lists of names of candidates in order of their relative excellence in respective examinations (20 ILCS 415/8b.3 (West 1992)). The Personnel Code further provides that CMS may substitute categories for numerical ratings and establish lists of candidates accordingly. 20 ILCS 415/8b.3 (West 1992). If CMS uses numerical lists, the employing agencies may consider for appointment the three highest applicants on the list. 20 ILCS 415/8b.5 (West 1992). If, as in the instant case, CMS uses categories rather than numerical lists, the employing agency must prefer for appointment the veterans over the nonveterans of the same category. 20 ILCS 415/8b.7(f) (West 1992). This is what the Personnel Code requires, and we are duty bound to enforce it.

The Commission additionally argues that granting veterans an absolute hiring preference over nonveterans of the same grade category renders sections 8b.3 and 8b.5 meaningless in certain situations. As noted above, section 8b.3 authorizes CMS to establish eligible lists of candidates and to provide these lists to the employing agencies. The Commission argues that if only one veteran were placed in the "A" category, an eligible list would be redundant because the veteran's selection would be automatic. Perhaps the Commission is correct in that a list of candidates would be unnecessary in such a situation, but we fail to see how this renders the statute meaningless.

Section 8b.5 provides:

"For the appointment of the person standing among the 3 highest on the appropriate eligible list to fill a vacancy, or from the highest ranking group if the list is by rankings instead of numerical ratings, except as otherwise provided in Sections 4b and 17a of this Act.

The Director may approve the appointment of a person from the next lower ranking group when the highest ranking group contains less than 3 eligibles." 20 ILCS 415/ 8b.5 (West 1992).

The Commission argues that this court's interpretation of section 8b.7(f) renders section 8b.5 meaningless because if the only candidate in the "A" category is a veteran, the veteran would be guaranteed the job and there would not be a third or even a second candidate for the agency to consider. Moreover, the Commission contends that if the legislature intended to exclude section 8b.7(f) from the three-candidate provision of section 8b.5 it would have included section 8b.7(f) among the specifically designated exceptions to section 8b.5. We observe, however, that section 8b.5 does not mandate that an agency have at least three candidates to choose from, but merely provides that CMS *may* approve the appointment of a person from the next lower ranking group when fewer than three candidates are available. CMS is not compelled to do so, however, and we therefore conclude that our interpretation of section 8b.7(f) is wholly compatible with section 8b.5.

The Commission next observes that veterans are not guaranteed an absolute hiring preference over nonveterans when candidates are ranked in numerical order. Indeed, section 8b.5 permits a hiring agency to consider for appointment any one of the three highest numerically ranked candidates. The Commission argues that it is illogical to suggest that the legislature intended a different result simply because CMS chooses to rank candidates by category instead of numerically. This court, however, will not pass on the wisdom of the legislature's handiwork. Our duty is to interpret section 8b.7(f) according to its plain and unambiguous language. We thus enforce section 8b.7(f) according to its unambiguous mandate that when categories are used veterans

shall receive an absolute hiring preference over nonveterans in the same category.

## CONCLUSION

Whether and to what extent veterans preferences should be granted are matters for legislative determination. Hiring preferences for veterans have traditionally been adopted to reward veterans for the sacrifice of military service, to ease the transition from military to civilian life, to encourage patriotic service, and to attract loyal and well-disciplined people to civil service occupations. *Personnel Administrator v. Feeney*, 442 U.S. 256, 265, 60 L. Ed. 2d 870, 879, 99 S. Ct. 2282, 2289 (1979); *People ex rel. Jendrick v. Allman*, 396 Ill. 35, 38, 39 (1947); *People ex rel. Sellers v. Brady*, 262 Ill. 578, 594 (1914).

For the reasons stated above, we determine that section 8b.7(f) of the Personnel Code (20 ILCS 415/8b.7(f) (West 1992)) provides veterans an absolute hiring preference over nonveterans within the same grade category. Accordingly, we affirm the appellate court's judgment reversing and remanding this cause to the circuit court of Sangamon County.

*Affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the veterans preference provision of the Personnel Code accords veterans an absolute preference over nonveterans receiving the same ranking, even when the nonveteran is more qualified for the position in question. The majority's interpretation is not required by the language of the statute, is inconsistent with the practice followed by the agency responsible for carrying out the statute, and conflicts with the requirements of other statutory provisions. For those reasons, I respectfully dissent.

The veterans preference provision at issue is found in section 8b.7(f) of the Personnel Code, which states:

"The rank order of persons entitled to a preference on eligible lists shall be determined on the basis of their augmented ratings. When the Director [of Central Management Services] establishes eligible lists on the basis of category ratings such as 'superior', 'excellent', 'well-qualified', and 'qualified', the veteran eligibles in each such category shall be preferred for appointment before the non-veteran eligibles in the same category." 20 ILCS 415/8b.7(f) (West 1992).

Declaring that "there is no value in a 'prefer[ence] for appointment' that does not result in appointment," the majority concludes that section 8b.7(f) unambiguously requires that a veteran be hired before a nonveteran when the two are assigned the same grade by the Department of Central Management Services (CMS). 176 Ill. 2d at 150. The applicants in the present case were graded on a descending scale of A, B, and C; both the plaintiff, Stephen Denton, and the person ultimately hired for the position at issue, Linda Lang, received grades of A. Under the majority's interpretation of section 8b.7(f), a veteran such as Denton who receives a grade of A must be hired instead of a nonveteran receiving the same grade, even when the veteran is less qualified for the job in question.

I disagree with the majority's conclusion that the statutory language is unambiguous, and with the majority's determination that the preference expressed in the statute can be effectuated only by requiring the hiring of veterans rather than nonveterans merely on the basis of the veterans' category ranking. The statute says simply that veterans "shall be preferred for appointment" before nonveterans, without describing the nature or strength of the preference. It is not clear from the statutory language whether the preference is absolute in all instances, or whether it may instead be overcome in some cases, as when a nonveteran possesses better qualifications. I agree with the defendant agencies that the provision affords a veteran an absolute

preference in hiring over a nonveteran in the same category only when the two candidates are equally well qualified. In addition, I note that other measures prescribed by CMS for agencies in conducting interviews and in making hiring decisions give further effect to the statutory preference. In my view, the agencies' interpretation fulfills the purposes of the statutory preference, as well as those of the Personnel Code, of which the preference is a part.

Notably, other provisions of the Personnel Code cannot be reconciled with the absolute preference the majority finds in the language of section 8b.7(f). For example, section 8b.5 of the Personnel Code provides "[f]or the appointment of the person standing among the 3 highest on the appropriate eligible list to fill a vacancy, or from the highest ranking group if the list is by rankings instead of numerical ratings, except as otherwise provided in Sections 4b and 17a of this Act." 20 ILCS 415/8b.5 (West 1992). The only two exceptions stated in that section pertain to persons whose positions were not initially covered by the Personnel Code and to persons appointed to certain trainee programs; if the legislature had intended for the veterans preference to operate in the absolute manner found by the majority, then section 8b.5 would cite the preference statute as an additional exception to the proviso allowing the hiring agency to make its selection from among the top three candidates.

The majority's interpretation also ignores the distinct roles played by CMS and the hiring agencies in employment decisions. The grades assigned by CMS refer only to the general qualifications of the applicants for the position classification in question. In this case, the applicants were applying for an executive IV position, and both received grades of A. In assigning those grades to the applicants, however, CMS was examining

only the general requirements of executive IV positions and the overall qualifications of the applicants, and was not considering the particular requirements of the post being filled by the Department of State Police or the more specialized qualifications possessed by the individual applicants. Two candidates might receive the same grade, reflecting their general qualifications for an executive IV position, yet they might not be equally well qualified for the specific position being filled by the hiring agency. CMS grades persons only on the basis of general characteristics required for a certain job classification. Under the majority's interpretation, however, an applicant's status as a veteran can become the sole determinant in hiring, once CMS places the veteran in the highest category. The majority's construction will prevent the more searching scrutiny previously undertaken by hiring agencies of an applicant's qualifications for a particular job.

As the defendants point out, CMS has adopted a number of measures that are designed to carry out the preference afforded by section 8b.7(f). Under guidelines adopted by CMS, agencies are instructed to consider and interview veterans first when both veterans and nonveterans appear on a list of eligible candidates. A nonveteran may be hired over a veteran only when the interviewing officer believes that "the prior educational training, past work experience and/or job related personal attributes of the nonveteran eligible presents evidence that he or she will perform the duties and functions of the vacant position in a manner superior to any of the by-passed veteran eligibles." A veteran who is not selected for a position may obtain a written explanation of the reasons for the hiring decision. In addition, CMS must give advance approval of an agency's request to hire a nonveteran over a veteran in the same category ranking. "As a general rule, courts will accord defer-

ence to the interpretation placed on a statute by the agency charged with its administration." *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361 (1988); see also *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 739, 135 L. Ed. 2d 25, 30, 116 S. Ct. 1730, 1733 (1996) ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering"). The interpretation expressed in the CMS guidelines, and offered here by the defendants, is a reasonable one, and it has the substantial merit of giving effect to the language of the statute without trenching on related provisions of the Personnel Code.

In the proceedings below, the appellate court questioned the validity of these administrative guidelines because they had not been promulgated through the formal rulemaking process set forth in the Illinois Administrative Procedure Act (5 ILCS 100/5—5 through 5—155 (West 1992)). The majority finds it unnecessary to resolve this issue, given the decision here to enforce section 8b.7(f) in a manner contrary to the guidelines. I do not believe that it was necessary for CMS to follow formal rulemaking procedures in establishing these standards. Because the CMS guidelines involve "agency management or personnel practices," there was no need under the Administrative Procedure Act for the department to promulgate the guidelines as administrative rules. See 5 ILCS 100/5—35(c) (West 1992).

Giving veterans an absolute preference over nonveterans in all instances, as the majority does, conflicts with the underlying purposes of the civil service laws, and we should look for a more definite statement of intent by the legislature before ascribing to the statutory language at issue here the meaning adopted by the majority. The Personnel Code is "based on merit

principles and scientific methods" (20 ILCS 415/2 (West 1992)), and, as this case illustrates, sometimes only the selection of a nonveteran over a veteran is consistent with that foundation. The position for which the plaintiff applied was that of Assistant Bureau Chief in the Drug Abuse Resistance Education (D.A.R.E.) Bureau, of the Illinois State Police. This executive IV post required, at a minimum, four years of college education, preferably with an emphasis on business or public administration, and four years of administrative experience in a public or business organization. The job description said that the person would be responsible for all D.A.R.E. training, field coordination, and curriculum development. A strong background in education was said to be essential.

The plaintiff, Stephen Denton, had a master's degree in labor relations and human resources administration from Sangamon State University. He had worked more than five years as an auditor with the Illinois Department of Public Aid, nine years as a labor union representative, and more than one year as executive director of an organization called the Veterans Protective League. The Department interviewed Denton for the position at issue but ultimately hired Linda Lang, a nonveteran. Lang had a master's degree in educational administration from Southern Illinois University and a bachelor's degree in history and political science from Millikin University. She had been a teacher and a school principal. At the time Lang applied for this position, she was employed by the Department of State Police as an educational consultant to the D.A.R.E. program. In that post, Lang supervised curriculum development, among other things, and she had been involved in the training of more than 1,800 D.A.R.E. officers. Lang also served on a federal D.A.R.E. regional advisory board, and she had received state and national awards for her D.A.R.E.-

related work. Lang was the better-qualified candidate, given her background and experience. I do not believe that the legislature intended that the veterans preference provision of the Personnel Code would, in these circumstances, require the selection of Denton instead.

Veterans preference provisions are intended "to reward veterans for the sacrifice of military service, to ease the transition from military to civilian life, to encourage patriotic service, and to attract loyal and well-disciplined people to civil service occupations." *Personnel Administrator v. Feeney*, 442 U.S. 256, 265, 60 L. Ed. 2d 870, 879, 99 S. Ct. 2282, 2289 (1979). Under the interpretation advanced by the defendants, the provision found in section 8b.7(f) of the Personnel Code accomplishes those goals by requiring the hiring of a veteran rather than a nonveteran when the two candidates are equally qualified, and by granting veterans a number of other advantages in the manner in which state agencies governed by the Personnel Code conduct interviews and make hiring decisions. The guidelines formulated by CMS achieve a careful balance between the need for the veterans preference legislation and the purposes of a civil service system, and I would defer to the defendants' construction of the statute.

JUSTICES FREEMAN and McMORROW join in this dissent.