# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Campbell v. Department of Personnel, Secretary of State, State of Illinois,*
**2013 IL App (4th) 120610**

| | |
|---|---|
| Appellate Court Caption | ROBERT K. CAMPBELL, Plaintiff-Appellant, v. THE DEPARTMENT OF PERSONNEL, SECRETARY OF STATE, STATE OF ILLINOIS; THE DEPARTMENT OF POLICE, SECRETARY OF STATE, STATE OF ILLINOIS; THE SECRETARY OF STATE MERIT COMMISSION, STATE OF ILLINOIS; and MICHAEL MASTERSON, JUDITH A. MYERS, N. DUANE NOLAND, JAMES TAYLOR, and FERDINAND P. SERPE, in Their Official Capacities as Commissioners of the Merit Commission and Not Personally, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-0610 |
| Filed | May 3, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's grievance with regard to the promotional process used for a position in the Secretary of State's police was properly denied, notwithstanding his contentions that an eligibility list was not created, standardized procedures were not used, and his veteran's preference was not honored, since plaintiff failed to establish why the preparation of an eligibility list was necessary, why a promotional decision had to be made solely on the basis of an employee ranked on objective criteria, or why he was entitled to an absolute veteran's preference pursuant to the Merit Code with regard to a promotion to an investigator-sergeant position. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-554; the Hon. John Schmidt, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | John M. Myers (argued), of Rabin & Myers, P.C., of Springfield, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Valerie Quinn (argued), Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Steigmann and Justice Holder White concurred in the judgment and opinion. |

## OPINION

¶ 1    On September 2, 2011, a hearing officer for the Illinois Secretary of State (Secretary) Merit Commission (Merit Commission) issued a recommended decision denying plaintiff Robert Campbell's grievance regarding the promotional process used by the Secretary's departments of personnel and police for the position of investigator-sergeant. Later that same month, the Merit Commission adopted the findings and rulings of the hearing officer. On administrative review, the circuit court concluded the findings of the Merit Commission were not against the manifest weight of the evidence and denied Campbell's petition for administrative review. Campbell appeals, arguing the Merit Commission erred in denying his grievance. We affirm the circuit court's denial of Campbell's challenge to the decision of the Merit Commission.

¶ 2                                    I. BACKGROUND

¶ 3    In December 2009, Campbell filed a grievance with the Merit Commission, alleging specific violations by the Secretary of State's departments of police and personnel of the Secretary of State Merit Employment Code (Merit Code) (15 ILCS 310/1 to 19 (West 2008)) and administrative rules and regulations in connection with the failure of the departments of police and personnel to promote him to the position of investigator-sergeant.

¶ 4    On September 2, 2011, the hearing officer issued a 30-page written order denying the claim. According to the order, Campbell alleged the following violations of the Merit Code, personnel rules, and/or the rules of the department of police:

"a. Section 10b of the Merit Employment Code and Section 420 of the Personnel Rules were violated, because the Department failed to create an eligibility list for a vacancy announcement dated October 15, 2007 and later;

b. Section 10b of the Merit Employment Code and Section 1000.70(d)(8) of the Rules of the Department of Police were violated, because the process lacked standardized procedures for promotions; and

c. Section 10b.7 of the Merit Employment Code was violated, because [defendants] failed to honor veteran's preference."

A pretrial hearing officer summarized the issues as follows:

"a. Was an appropriate eligibility list created;

b. Did [defendants] use appropriate standardized procedures for the promotion; and

c. Was the personnel action treated as an appointment or promotion?"

¶ 5 The hearing officer summarized the evidence presented as follows. Campbell was a certified employee holding the title of investigator for the Secretary's department of police. On December 7, 2009, Campbell filed a grievance letter, which he later amended on December 14, 2009, alleging the Secretary's departments of personnel and police violated the Merit Code.

¶ 6 Campbell testified he began working for the department of police in July 2000 as a road investigator in the Macomb area. In 2002, Campbell assumed a full-time position as trainer with the same department. Later, he left the trainer position and returned to the road as a full-time investigator. Prior to working for the Secretary, Campbell was a campus police officer at Western Illinois University for 3 1/2 years. Prior to that, Campbell was a military police officer in the United States Army.

¶ 7 In 2007, after seeing a notice for the open-exam schedule for the investigator-sergeant title and two job openings for investigator-sergeant, Campbell submitted his resume and application for the investigator-sergeant positions to Toni Bentel, who worked in human resource management for the Secretary's department of police. Campbell took the exam and received an "A." After the exam, Campbell appeared for a structured interview before the interview board. Campbell answered prepared questions from a list. After appearing before the board, Campbell interviewed with Brad Demuzio, the director of the Secretary's department of police. Campbell testified no one was promoted to investigator-sergeant. From July 2008 to July 2009, Campbell functioned as an interim sergeant.

¶ 8 In 2009, public notice was given for a permanent investigator-sergeant position. Campbell submitted a memorandum expressing interest in the open position along with a copy of his application and resume and information regarding veteran's points and preferences. Campbell was selected for an interview with the board, which consisted of Captain David Allen, Lieutenant Joan Willenborg, and Lieutenant David Dellert. Campbell also met again with Demuzio. Campbell testified he told Demuzio the following:

"I'm the best qualified guy. I'm the only applicant that has a master's degree. I'm basically the only applicant that had a bachelor's degree. My test scores were the highest. My oral–I didn't know at the time what my oral scores were, but I figured I did pretty good on it. But my written exam was the only 'A' in the department. I've got almost two full decades of supervisory experience, at least minimal of 15. And then I had a year with–15 years military–excuse me, let me rephrase it–[14] years actual supervisory time

in the military. I had a year of interim here. I had a year of shift supervisor at Western. I've been a supervisor for a long time and I don't believe any of the other applicants have any type of experience close to mine."

When he did not receive the promotion, Campbell filed a grievance and requested the eligibility lists for the two promotional opportunities in 2007 and 2009. The director of the Secretary's department of personnel told Campbell no lists were kept as these were promotions. Campbell testified Demuzio interviewed three people in 2007 and five people in 2009.

¶ 9        Toni Bentel, who was an executive III supervisor of human resources for the Secretary's department of police during the promotional period in question, testified the Secretary's department of personnel was required by the administrative code to establish and maintain eligibility lists of qualified applicants for jurisdiction "B" positions, which included the position at issue here. However, Bentel testified eligibility lists did not need to be prepared for the promotion process from investigator to investigator-sergeant. The hearing officer quoted Bentel as follows:

" 'Because of my understanding of a [*sic*] eligible list is something that is controlled by the Department of Personnel. And my understanding is that when applicants come in to take like a written exam for a certain position, they are–whatever the result is from their exam, they obtain a grade for that position. And that is information that goes on this eligible list. So if we were to hire an individual from outside the Secretary of State's office, the Department of Personnel would call when they generate this eligible list of applicants that would be allowed an interview, come into the Personnel Department for that oral interview. Promotional process was an internal process, so we did not ask the Department of Personnel to call an eligible list.' "

Bentel testified the Secretary's department of personnel does not maintain an eligibility list for promotion to sergeant.

¶ 10       According to Bentel, section 10b.3 of the Merit Code (15 ILCS 310/10b.3 (West 2008)) did not apply to situations for promotions from investigator to investigator-sergeant. The list of eligible applicants she receives from the personnel department is not the same as an "eligibility list" referred to in the regulations. Bentel testified Campbell had the second-highest score in District 3 on the structured interview. According to Bentel, veteran's points were applied in the application but not the promotional process.

¶ 11       Richard Hortberg testified he is an executive III administrator in the standards and testing division of the Secretary's department of personnel. This division oversees personnel operations related to the classification and job title system used by the Secretary of State's office. Hortberg agreed an eligibility list would be generated when a position was to be filled from an open-competitive process. Hortberg also testified "calling an eligibility list" occurs when someone queries the eligibility database kept by the Secretary's department of personnel. Hortberg testified eligibility lists are not created when filling a position by promotion, *i.e.*, where a department is making an internal decision to advance an employee. According to Hortberg's testimony, with regard to the promotion process in this case, the department of personnel's role was to ensure the person selected for promotion met the

minimum title qualifications. Although a written exam with a graded system is given for the position of investigator-sergeant, a higher grade does not create an advantage in the promotion process. Hortberg testified veteran's preference applies to the hiring process, not the promotional process. Hortberg was unaware of any provision requiring an eligibility list to be prepared in the promotion process.

¶ 12    Demuzio testified he selected, as the director of the Secretary's department of police, the interview panel for the sergeant promotional process. After the panel recommended candidates, Demuzio performed one-on-one interviews with the recommended candidates and made the final promotion decision. Demuzio testified he did not remember seeing actual test scores, believing the scores were not important at that point because all of the candidates had been screened and found minimally qualified. The interview panel made recommendations to him and told him how the candidates ranked but did not necessarily tell him the candidates' test scores.

¶ 13    After he interviewed the candidates, Demuzio met with Captain David Allen, Lieutenant David Dellert, Toni Bentel, Deputy Director Stephen Rutledge, and Captain Mike Pippin. Lieutenant Dellert said Campbell did not get along with his peers. Demuzio testified Dellert also told him on another occasion Campbell did not know how to do an investigation. Further, according to Demuzio, another applicant for the investigator-sergeant position, Investigator William Bolletta, told him he was not interested in the investigator-sergeant position and only applied because he did not want Campbell to get the position. Demuzio acknowledged his conversations with Dellert and Bolletta were factors in his decision not to promote Campbell. According to Demuzio's testimony, he was unaware at the time of the promotions one of the individuals he promoted, Investigator Hale, had received a written warning for misusing the Law Enforcement Agencies Data System (LEADS).

¶ 14    Demuzio acknowledged nothing in the administrative code in effect in 2007 and 2009 specifically provided for the director to conduct one-on-one candidate interviews or make the ultimate decision on who to promote.

¶ 15    Demuzio testified the executive office of the Secretary of State verbally directed him to cancel the 2007 investigator-sergeant promotional process for budgetary reasons.

¶ 16    Lieutenant David Dellert, supervisor of daily operations in District 3 for the department of police, testified he had been Campbell's supervisor since February 2006. Campbell's duties as an interim sergeant included supervising a squad of six members, reviewing cases, and supervising details. Dellert testified Campbell did his job but did not command respect from the other investigators. Dellert testified he also supervised Investigator Ben Hale, who received one of the promotions instead of Campbell, in his role as an interim sergeant. Hale also did his job and commanded more respect than Campbell from the investigators he supervised.

¶ 17    Captain David Allen testified he was Campbell's supervisor for approximately two years when Campbell worked in the training section of the Secretary's department of police. Campbell was removed from the training position in January 2004 after a recruit complained about a training technique Campbell used. Allen testified he had evaluated Campbell as an effective trainer. Allen also testified Demuzio was told Campbell's peers lacked respect for

him. Allen stated Ben Hale was promoted to sergeant because he was more self-sufficient and had the respect of his men. Allen also noted geographical considerations were discussed in the promotion process.

¶ 18    The hearing officer noted Campbell bore the burden of proving the rule violations and noted the facts were largely uncontested. Concerning Campbell's complaint that an eligibility list was not used to determine who would be promoted, the hearing officer found as follows. A "listing" is created when hiring in an open competitive process outside of the Secretary of State. For promotional advancement within the Secretary of State, a database is accessed to determine who is eligible for promotion. The Merit Commission had previously held in Manning v. Departments of Police & Personnel, No. 201-2, an eligibility list used for initial hiring into the Secretary of State's office is not required to be used in determining promotions. Therefore, this complaint failed.

¶ 19    The hearing officer next addressed Campbell's argument the Merit Code and administrative regulations were violated because of a lack of standardized procedures for promotions. While Campbell contended the rules did not permit one-on-one interviews with the director or a staff meeting to discuss applicants, the hearing officer noted nothing in the administrative rules prohibits the director of the Secretary's department of police from interviewing applicants for promotions. Further, the hearing officer noted Bentel testified the promotional process varied with the title and the job and no standard operating procedures existed for the promotional process beyond the minimum requirements of the rules. The lack of a written memorialization of the process did not violate the rules. Further, nothing in the record showed the Secretary's departments of police and personnel failed to comply with section 10b.2 of the Merit Code (15 ILCS 310/10b.2 (West 2008)), which required consideration of the applicants' performance record, qualifications, seniority, and conduct. In addition, the hearing officer noted Campbell "completed an application, took an examination and had an oral interview before the *** panel appointed by the Director" as required by section 1000.70(d)(8) of title 92 of the Illinois Administrative Code (92 Ill. Adm. Code 1000.70(d)(8), amended at 29 Ill. Reg. 1960, 1964-65 (eff. Jan. 20, 2005)). The hearing officer stated nothing in section 1000.70(d)(8) suggests the promotional process was limited to the required steps found in that section of the administrative code.

¶ 20    With regard to the events that occurred after the board interviews of the eligible applicants, the hearing officer stated:

"While the evidence shows that following the board interviews panel members discussed the fact that [Campbell] lacked the support and respect of his peers, and the record further indicates that candidate Bolletta expressed to others including the Director that he applied for the position of Investigator-Sergeant because he did not want [Campbell] to get the job, and even though the Director was reportedly not advised and was unaware that candidate Hale had been reprimanded for misusing the LEADS system, there is nothing in the rules that prohibits the Director from taking into consideration the morale and well-being and the loyalty of his personnel, and stability within his department when selecting a candidate for promotion, especially to a supervisory position. And, the rules do not mandate that a candidate who has been reprimanded must be excluded from consideration in the promotion process.

Likewise, there is no mandate that the top candidate be chosen for promotion. Director Demuzio was not required to choose those who looked best on paper or had superior academic credentials. Demuzio indicated that after candidates were screened by the panel, he conducted personal interviews to get a feel for how they would do as a leader. He took into account not only the applicant's qualifications and seniority, *** he also considered their performance record and conduct in making his selection for promotion. Demuzio and panel members [Captain] Allen and [Lieutenant] Dellert testified that Petitioner did not have the respect of his peers[,] bringing to the forefront the issues of subordinates' loyalty and confidence in Campbell's leadership abilities."

¶ 21 With regard to Campbell's allegations the Secretary's departments of police and personnel failed to honor veteran's preference pursuant to section 10b.7 of the Merit Code (15 ILCS 310/10b.7 (West 2008)) and section 420.300(c) of title 80 of the Administrative Code (80 Ill. Adm. Code 420.300(c), amended at 32 Ill. Reg. 15017, 15032 (eff. Sept. 8, 2008)), the hearing officer stated:

"The relevant sections of the Merit Employment Code and the [Department] of Personnel Rules provides [*sic*] for granting preference in entrance examinations to qualified persons who were members of the U.S. Armed Forces by way of assignment of points added to the entrance examination grade. Richard Hortberg testified that application of the veterans preference was two pronged, that is, first, qualifying veterans get points at the time of examinations, and second, veterans preference is applied in the hiring process to those in the upper-most categories in the interview process. He stated that the hiring preference portion does not apply in the promotional process, rather, it may be used in placement of new hires from eligibility lists. Hortberg further testified that Petitioner was granted veteran's preference points at the time of his examination."

The hearing officer found since this was a promotion rather than an appointment, an absolute veteran's preference did not apply.

¶ 22 Finally, the hearing officer stated Campbell failed to meet the burden of proof required by the Merit Code and the Merit Commission's rules.

¶ 23 On September 21, 2011, the Merit Commission adopted and concurred in the findings and rulings of the Secretary of State's hearing officer.

¶ 24 In October 2011, Campbell filed an administrative review complaint in the circuit court pursuant to the Administrative Review Law. In May 2012, the court denied Campbell's petition for administrative review, stating it could not say the findings of the Merit Commission were against the manifest weight of the evidence.

¶ 25 This appeal followed.

¶ 26 II. ANALYSIS

¶ 27 A. Standard of Review

¶ 28 We first note our supreme court has stated "under any standard of review, a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d

497, 532-33, 870 N.E.2d 273, 293 (2006). Final decisions of the Merit Commission are subject to judicial review under the Administrative Review Law. See 15 ILCS 310/9b (West 2008); 735 ILCS 5/3-101 to 3-113 (West 2008). In an administrative review appeal, we review the final decision of the agency, not the judgment of the circuit court. *Jennings v. White*, 363 Ill. App. 3d 637, 642, 842 N.E.2d 740, 744 (2005).

¶ 29        This court may apply three standards of review when reviewing the Merit Commission's decision, depending on the nature of the question we are considering. If the question is one purely of fact, we deem the Merit Commission's findings and conclusions to be "prima facie true and correct" (735 ILCS 5/3-110 (West 2008)), and we will overturn such findings only if they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018 (2008). A factual determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or not based on evidence. *Cinkus*, 228 Ill. 2d at 210, 886 N.E.2d at 1018. If, however, the question is one purely of law, we give the Merit Commission no deference unless it resolved a genuine ambiguity in a statute or regulation it was charged with administering. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 656, 840 N.E.2d 704, 708 (2005). We decide legal questions *de novo*. *City of St. Charles v. Illinois Labor Relations Board*, 395 Ill. App. 3d 507, 509, 916 N.E.2d 881, 883 (2009).

¶ 30        We review mixed questions of fact and law by asking whether the agency's decision is clearly erroneous. See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392, 763 N.E.2d 272, 280 (2001). Under the clearly erroneous standard of review, we give some deference to the Merit Commission's decision but not as much deference as if the question were one purely of fact. See *AFM*, 198 Ill. 2d at 392, 763 N.E.2d at 280. A finding is clearly erroneous if, despite the existence of some evidence to support the finding, the evidence in its entirety leaves the reviewing court with the definite and firm conviction that the finding is a mistake. *AFM*, 198 Ill. 2d at 393, 763 N.E.2d at 280-81.

¶ 31        In this case, Campbell challenges both the Merit Commission's interpretation of the Merit Code and its own administrative rules and regulations and its ultimate decision to deny his claims. Whether the Merit Commission correctly interpreted the Merit Code and the administrative rules and regulations is a legal question, which we review *de novo*. As the appellant, Campbell must establish the Merit Commission erred in the manner it interpreted the Merit Code and the administrative rules and regulations. We review the Merit Commission's ultimate decision denying Campbell's claim under a clearly erroneous standard of review as it involves the application of the law to the undisputed facts in this case.

¶ 32                                B. Regulations Pertaining to Promotions

¶ 33        Campbell argues the Secretary's departments of personnel and police violated their own regulations pertaining to promoting employees. According to Campbell, section 1000.70(d)(4) of title 92 of the Illinois Administrative Code (92 Ill. Adm. Code 1000.70(d)(4), amended at 34 Ill. Reg. 2755, 2760 (eff. Feb. 2, 2010)) "is specifically

designed to introduce merit principles and scientific methods into the promotional process–not to mention, at least according to Toni Bentel, the principles of the *Rutan* decision."

¶ 34 We first note Campbell is citing the current version of the administrative rule found at section 1000.70(d)(4) of title 92 of the Administrative Code (92 Ill. Adm. Code 1000.70(d)(4), amended at 34 Ill. Reg. 2755, 2760 (eff. Feb. 2, 2010)). The administrative rule was amended after the promotional process at issue in this case. At the time the promotional process was occurring, section 1000.70(d)(8) of title 92 of the Administrative Code stated:

"8) Application and Testing Procedures for Investigator[-] Sergeants. Any applicant for the position of Investigator[-]Sergeant must complete or successfully pass the following application procedure:

A) The filing of the standard personnel application form with the Department of Personnel with a copy to the Department of Police.

B) A written examination for Investigator[-]Sergeants.

C) An oral interview conducted by a panel of sworn officers of the Department in the grade of at least Investigator[-]Sergeant, appointed by the Director to determine the applicant's qualifications and suitability for promotion to the rank of Investigator[-]Sergeant." 92 Ill. Adm. Code 1000.70(d)(8), amended at 29 Ill. Reg. 1960, 1964-65 (eff. Jan. 20, 2005).

Although Campbell refers to the current version of the rule, we will treat Campbell's argument as if he were referring to the relevant subsection at issue during the promotional process. According to Campbell, instead of simply following section 1000.70(d)(8), the Secretary and its department of police "have erected a completely different system, a system having no basis in the Merit Code or in the regulations, a system that is the very antithesis of merit principles and the scientific method."

¶ 35 While clearly unhappy with the process Demuzio used to pick the two individuals who would be promoted after the requirements of section 1000.70(d)(8) of title 92 of the Administrative Code (92 Ill. Adm. Code 1000.70(d)(8), amended at 29 Ill. Reg. 1960, 1964-65 (eff. Jan. 20, 2005)) were met, Campbell fails to establish how the process violated any statute or administrative rule. As the State argues, the statutes and the regulations neither required nor prohibited Demuzio from interviewing applicants deemed eligible for promotion after the requirements of section 1000.70(d)(8) were met to determine which candidate could best function in a supervisory role.

¶ 36 Campbell notes appellees argue Campbell was passed over for promotion because of his past performance. Apparently, Campbell believes past performance should not be a factor in determining who should receive a promotion. According to Campbell, "if 'past performance' is the criterion for promotion, then all the tests, interviews, promotion board, etc., are but a fig leaf" to a "high school popularity contest." However, Campbell fails to establish how considering past performance in making the ultimate determination regarding promotion violated any law or regulation. As the State points out in its brief:

"[An] assessment of Campbell's fitness, qualifications and conduct included

consideration of his performance during [the] year he had spent with the Department of Police as an interim sergeant. That temporary appointment gave the Department a year within which to observe how Campbell conducted himself as a supervisor. Any review of that performance rightly includes consideration of the level of respect Campbell commanded from the investigators he supervised, their trust in having him lead them, and their willingness to bring questions to him."

Moreover, as discussed below, section 10b.2 of the Merit Code (15 ILCS 310/10b.2 (West 2008)) specifically provides for a person's performance record and conduct to be considered in promotion decisions. Campbell failed to establish why considering these factors in the promotional process violated any statute or administrative regulation.

¶ 37    Campbell also argues Demuzio and the other staff should have reviewed the applicants' personnel files and disciplinary history before Demuzio decided who to promote. According to Campbell's brief, if a performance evaluation system had been in place as mandated by section 10b.14 of the Merit Code (15 ILCS 310/10b.14 (West 2008)) and had those evaluations been reviewed by the Director and the other staff, they would have been aware Investigator Hale had been reprimanded for his admitted misuse of LEADS.

¶ 38    Section 10b.14 of the Merit Code states:

"Performance records. To foster staff development and utilization by means of records of performance of all employees in the Office of the Secretary of State. The performance records may be considered in determining salary increases provided in the Pay Plan. The performance records shall be considered as a factor in determining salary decreases, the order of layoffs due to a lack of funds or work, reinstatement, demotions, discharges and geographical transfers." 15 ILCS 310/10b.14 (West 2008).

While it makes sense to consult performance files during a promotion process, this section does not require anyone to do so. Regardless, as the hearing officer noted and Campbell does not dispute, "the rules do not mandate that a candidate who has been reprimanded must be excluded from consideration in the promotion process."

¶ 39    Campbell takes issue with the fact an eligibility list was not prepared for the promotion process in this case. The only reason Campbell gives requiring the preparation of an eligibility list is the fact an open competitive examination period was announced for the positions, the applicants were ranked into categories, and Campbell received additional points on his examination score because of his veteran status. According to Campbell, because the Secretary's departments of personnel and police did these things, these same departments cannot say preparation of an eligibility list was completely unnecessary.

¶ 40    Regardless of whether these steps were required, Campbell fails to establish why the preparation of an eligibility list was necessary simply because these things were done. The only testimony before the hearing officer from longtime employees in personnel was, in effect, an eligibility list is not required when promoting from within. Campbell does not point this court to definitive authority to support his argument he was entitled to the promotion. Based on the arguments made by Campbell, he has not established the Department violated any statute or administrative regulation by not preparing an eligibility list in this case.

¶ 41    Finally, Campbell points this court to section 420.370(b) of title 80 of the Illinois Administrative Code (80 Ill. Adm. Code 420.370(b), amended at 32 Ill. Reg. 15017, 15054 (eff. Sept. 8, 2008)), which discusses the director of the Secretary's department of personnel approving the promotion of qualified employees. According to Campbell, "it is crystal clear from this case that the department of personnel has abdicated its responsibilities and handed over the decision-making process for promotions to Director Demuzio's popularity contest." However, Campbell does not explain how approving a promotion is the same as making the decision about who to promote. Further, he does not cite the record in establishing the Secretary's director of personnel did not approve the promotions made by Demuzio.

¶ 42                          C. Employee Ratings

¶ 43    Campbell next argues he was entitled to the promotion over Investigator Hale because he had an "A" rating and Hale had a "B" rating. Campbell cites section 10b.5 of the Merit Code (15 ILCS 310/10b.5 (West 2008)) as authority for the proposition appointments subject to Jurisdiction B must be made from the "highest ranking group." Section 10b.5 states:

> "Appointments. For the appointment of a person standing among the 10 highest on the appropriate eligible list to fill a vacancy, or from the highest ranking group if the list is by rankings instead of numerical ratings, except as otherwise provided in paragraph (2) of Section 5C and Section 16 of this Act." 15 ILCS 310/10b.5 (West 2008).

However, the General Assembly intended "appointments" and "promotions" to be treated differently. Section 10b.2 of the Merit Code states:

> "Promotions. For promotions which shall give consideration to the applicant's qualifications and performance record, seniority and conduct. An advancement in rank or grade to a vacant position constitutes a promotion." 15 ILCS 310/10b.2 (West 2008).

We are dealing with a promotion in this case. Campbell has not established the General Assembly intended to require the Secretary of State to make promotional decisions based solely on how employees ranked on strictly objective criteria.

¶ 44    The decision to promote someone to a supervisory position requires the individuals making the decision to have the flexibility to consider factors that cannot be tested objectively. The ability to command respect of subordinates and the ability to be self-sufficient and independent are not capable of measurement by some written examination. Upper level management, under the current scheme in place, has the ability to consider these factors in addition to the minimum requirements of the position. This system may not be perfect. However, a system restricted to considering only objective test results would most likely be unable to identify leadership qualities that can be observed in practice. Promotion decisions under the Merit Code are allowed to consider a person's performance record and conduct. 15 ILCS 310/10b.2 (West 2008). These factors are necessarily subjective to a certain degree.

¶ 45    Campbell next cites section 420.310(a) of title 80 of the Administrative Code (80 Ill. Adm. Code 420.310(a), amended at 32 Ill. Reg. 15017, 15037 (eff. Sept. 8, 2008)) for the proposition the Secretary's department of personnel was required to "establish and maintain lists of qualified applicants for positions covered by Jurisdiction B of the Code." According

-11-

to the remainder of subsection (a):

> "Such applicants shall have successfully qualified through competitive examinations as provided in Section 420.300(a). The names of qualified applicants shall be arranged in the order of their relative excellence, whether by numerical grade or category grouping. The length of time an eligible applicant's name may remain on the eligible list shall be established by the Director of Personnel." 80 Ill. Adm. Code 420.310(a), amended at 32 Ill. Reg. 15017, 15037 (eff. Sept. 8, 2008).

Regardless of whether the Secretary's department of personnel had to keep a list of applicants who had passed the investigator-sergeant examination and rank those individuals in the order of their excellence, the real question is whether a promotional decision had to be based on the rankings found on that list. Campbell argues the "eligibility list for sergeant promotions should be used in the manner mandated by [s]ection 10b.5 of the Merit Code." According to Campbell, this would have required the "A" rated Campbell to be hired before the "B" ranked Hale. However, as we stated earlier, section 10b.5 of the Merit Code deals with appointments, not promotions. This case involves a promotion.

¶ 46                     D. Absolute Veteran's Preference

¶ 47    Campbell also argues he was entitled to absolute veteran's preference for the investigator-sergeant position, relying on section 10b.7(f) of the Merit Code (15 ILCS 301/10b.7(f) (West 2008)), which states:

> "For the granting of appropriate preference in *entrance examinations* to qualified persons who have been members of the armed forces of the United States or to qualified persons who, while citizens of the United States, were members of the armed forces of allies of the United States in time of hostilities with a foreign country, and to certain other persons as set forth in this Section.
>
> * * *
>
>    (f) The rank order of persons entitled to a preference on eligible lists shall be determined on the basis of their augmented ratings. When the Director establishes eligible lists on the basis of category ratings such as 'superior', 'excellent', 'well-qualified', and 'qualified', the veteran eligibles in each such category shall be preferred for appointment before the non-veteran eligibles in the same category." (Emphasis added.)

Campbell points out the statute does not define the term "entrance examination." However, section 420.300(a)(3) of title 80 of the Illinois Administrative Code clearly states: "Entrance examination shall mean the examination that resulted in the *initial appointment* of an applicant to a position in the Office of the Secretary of State." (Emphasis added.) 80 Ill. Adm. Code 420.300(a)(3), amended at 32 Ill. Reg. 15017, 15032 (eff. Sept. 8, 2008). We are not dealing with an initial appointment in this case. This case involves an internal promotion within the Secretary's office.

¶ 48    Campbell argues the Secretary's departments of personnel and police made a "fanciful distinction between a preference in *testing* *** and a preference in *hiring*." According to

Campbell, the statute does not call for a preference in testing but does compel a preference in hiring. However, Campbell misreads the statute in this regard. The first sentence of section 10b.7 specifically tells the director of personnel to establish rules "[f]or the granting of appropriate preference in entrance examinations to qualified persons who have been members of the armed forces of the United States." 15 ILCS 310/10b.7 (West 2008). Subsection (b) then states: "The preference granted under this Section shall be in the form of points added to the final grades of the persons if they otherwise qualify ***." 15 ILCS 310/10b.7(b) (West 2008). While the test in question was not an entrance exam, Campbell was only helped, not harmed, by receiving veteran's preference points on his examination score. With regard to Campbell's second point, as we stated earlier, section 10b.7(f) calls for a veteran's preference with regard to "appointment," not promotion.

¶ 49    Campbell's reliance on *Denton v. Civil Service Comm'n*, 176 Ill. 2d 144, 679 N.E.2d 1234 (1997), is misplaced. The issue before our supreme court in *Denton* was "whether section 8b.7(f) of the Personnel Code (20 ILCS 415/8b.7(f) (West 1992)) affords veterans an absolute *hiring* preference over nonveterans within the same grade category." (Emphasis added.) *Denton*, 176 Ill. 2d at 145, 679 N.E.2d at 1235. As we have stated, this case involves a promotion, not an initial hiring decision. Campbell has failed to establish he was entitled to an absolute veteran's preference to the investigator-sergeant position pursuant to section 10b.7(f) of the Merit Code (15 ILCS 310/10b.7(f) (West 2008)).

¶ 50    Based on the arguments made by Campbell in this appeal, we cannot say the Merit Commission's denial of his claims was clearly erroneous.

¶ 51                                III. CONCLUSION

¶ 52    For the reasons stated, we affirm the circuit court's judgment which denied Campbell's appeal of the Merit Commission's decision.

¶ 53    Affirmed.