2021 IL App (1st) 190604-U

No. 1-19-0604

Order filed March 25, 2021

FOURTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEDRO GONZALEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | 16 CH 06493 |
| ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY | ) | |
| SERVICES, and DIRECTOR OF CHILDREN AND FAMILY | ) | |
| SERVIES, George H. Sheldon, *et al.*, | ) | |
| | ) | Honorable, |
| | ) | Sophia H. Hall, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Decision of the Director of the Illinois Department of Children and Family Services denying Pedro Gonzalez's request to expunge the indicated finding of child abuse against him is affirmed where the decision was not against the manifest weight of the evidence.

¶ 2    Plaintiff, Pedro Gonzalez, appeals *pro se* from an order of the circuit court of Cook County

which affirmed a final administrative decision of the Director of the Illinois Department of

Children and Family Services (DCFS) denying his request to expunge an "indicated" finding of child abuse against him that was entered into the state central register (325 ILCS 5/7.7 (West 2012)). Gonzalez contends that the Director's decision is against the manifest weight of the evidence because no evidence was presented establishing that he was responsible for the indicated finding of abuse. We disagree and affirm.[1]

¶ 3                                       I. Background Information [2]

¶ 4     On December 31, 2006, a son, J.F., was born to Luis Felipe and Sandra Musto, husband and wife. Sometime in 2013, Felipe and Musto separated and eventually dissolved their marriage. By the fall of 2013, Musto and J.F. were living with Musto's boyfriend Pedro Gonzalez the appellant. During this time, Felipe maintained regular visitation rights with his son.

¶ 5     In October 2013, Musto and Gonzalez took J.F. to a physician claiming that J.F. had suffered physical abuse by Felipe. Specifically, it was alleged that J.F. had bruising to his thighs as a result of Felipe holding the child's legs very tightly while J.F. was getting his hair cut. DCFS was contacted and it opened an investigation into the allegations of child abuse. After investigating the allegations of abuse made against Felipe, DCFS along with the Berwyn Police Department, determined that the allegations were unfounded.

¶ 6     After concluding that Felipe was not responsible for J.F.'s injuries, DCFS and the Berwyn Police Department continued their investigation. Eventually, DCFS concluded that credible evidence supported a finding that Gonzalez was responsible for J.F.'s injuries. On November 26, 2013, DCFS notified Gonzalez that he was indicated for allegation of harm for "Cuts, Bruises,

---

[1]  In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

[2]  The following facts are taken from the transcripts of the proceedings before the administrative law judge (ALJ), the pleadings, and exhibits of record.

Welts, Abrasions and Oral Injuries." 89 Ill. Adm. Code § 300, appendix B (Allegation 11) (2010). Gonzalez was further advised that his name would be placed for a period of 20 years on the state central register as a result of the indicated finding of abuse. Gonzalez notified DCFS on January 20, 2014, of his request that his name be expunged from the register. He was subsequently granted an administrative hearing to resolve the expungement issue.

¶ 7 A hearing was held before an Administrative Law Judge (ALJ) on March 13th and September 30th in 2015, and the hearing concluded on February 24, 2016. At the conclusion of the hearing, the ALJ recommended that the Director of DCFS uphold the indicated finding of child abuse against Gonzalez. The Director concurred and issued a final administrative decision adopting the findings, conclusions, and recommendations of the ALJ. Gonzalez sought administrative review in the circuit court, which affirmed the Director's decision and after the circuit court denied Gonzalez's motion for reconsideration, this appeal followed.

¶ 8                                    II. The Administrative Hearing

¶ 9 The following evidence was presented at the administrative hearing. On October 4, 2013, Felipe took his six-year-old son J.F. to the barbershop to get his haircut. Three days later, Musto and Gonzalez brought J.F. to see Dr. Guido Grasso-Knight and told the doctor that when J.F. returned home from a visit with his father, Felipe, they observed bruises on the child's head and thighs. They stated that J.F. told them that Felipe caused the bruises when he held him down in a barber's chair during the haircut. Dr. Grasso-Knight testified that he spoke with J.F. and that the child repeated the same version of events described by Musto and Gonzalez.

¶ 10 Dr. Grasso-Knight observed a small ovular bruise on J.F.'s forehead and small bruises on the child's upper thighs. The doctor noted that the coloring of the bruises indicated they were recent bruises. The doctor observed that the size and shape of the bruises on the child's thighs were

consistent with the explanation that Felipe had applied pressure to the boy's thighs.

¶ 11    Dr. Grasso-Knight clarified that his knowledge of the causes of the bruises was based entirely on what Musto, Gonzalez, and J.F. told him during the child's physical examination. The doctor acknowledged that neither he nor his staff investigated the allegations of child abuse against Felipe, but instead, reported the matter to DCFS.

¶ 12    Carmelita Terry, a police detective with the Berwyn Police Department testified that on or about October 7, 2013, she opened a criminal investigation into allegations of child abuse against Felipe, after Musto and Gonzalez, who had brought along J.F., came into the police station to file a complaint against Felipe. According to the detective, Musto stated that Felipe had bruised J.F.'s thighs when he forcefully held the child down in a barber's chair to get his haircut. The detective asked J.F. "if anything bad happened" when he was with his father. J.F. initially responded that nothing bad happened, but he changed his story after his mother repeatedly interrupted him and "coached him" to provide the story about Felipe causing the bruises on his thighs. Detective Terry testified that at one point she asked Musto and Gonzalez to leave the room because they kept interrupting J.F. in order to coach him on what to say about Felipe.

¶ 13    Detective Terry testified that she noticed that J.F.'s haircut looked like an average haircut and did not look like he was struggling when it was cut. The detective observed bruises on J.F.'s thighs which looked like fingertip marks. The detective also observed that when Gonzalez placed his hands on J.F.'s thighs to demonstrate how he claimed Felipe had held the child down in the barber chair during the haircut, his fingers matched the outline of the bruises. The detective relayed this information to DCFS.

¶ 14    The investigation by DCFS was assigned to investigators Miguel Sandoval and Carmen Vera. DCFS Investigator Vera conducted all of the interviews.

¶ 15    DCFS investigator Vera testified that during her initial meeting with J.F. she observed bruises on the child's inner right thigh and right knee. She interviewed J.F. in the presence of Musto and Gonzalez. J.F. stated that Felipe took him to the barber shop to get his hair cut, and that during the haircut, Felipe held him down in the barber's chair bruising his thighs.

¶ 16    On October 10, 2013, Detective Terry went to the barbershop to view security video taken the day of the alleged incident. The video showed the child hugging Felipe, sitting on his lap, and playing near Felipe while waiting to get his haircut. During the haircut, J.F. "laughed and joked" The detective testified that the video never showed Felipe grab J.F. in any way that could have possibly caused the bruises on the child's thighs. The owner of the barbershop was unable to provide Detective Terry with a copy of the security video because the recording device was unable to make DVD copies at that time.

¶ 17    Detective Terry testified that after viewing the security video she closed her criminal investigation of Felipe. The detective testified that she did not "pursue anything with respect to Gonzalez" because the family lived in the town of Cicero and she had no reason to believe that Gonzalez abused J.F. while in Berwyn. However, the detective informed DCFS investigator Vera about the video.

¶ 18    DCFS investigator Vera testified that on October 17, 2013, upon issuance of a subpoena, she appeared in family court to testify at a hearing regarding an ongoing domestic relations matter between Musto and Felipe concerning the physical custody of J.F. Detective Terry also appeared at the hearing. DCFS investigator Vera relayed to the court what the detective had observed on the security video and recommended that J.F. be placed with Felipe. She further testified that after giving her recommendation, Gonzalez became angry and threatened her in open court causing him to be escorted from the courtroom. The family court entered an order granting Felipe temporary

custody of J.F.

¶ 19    The day following her family court appearance, DCFS investigator Vera went to J.F.'s school to interview him a second time outside the presence of Musto and Gonzalez. The school's principal and other staff were present during the interview. Investigator Vera testified that when J.F. saw her, he ran towards her and grabbed her legs. J.F. told the investigator that he was happy living with Felipe and that Gonzalez had caused the bruises. He told the investigator that Felipe never bruised him and that he lied about the whole thing because Gonzalez had threatened to hurt him if he told the truth. When investigator Vera asked J.F. how Gonzalez threatened him, he initially responded that Gonzalez usually puts him a corner, but then he started screaming, causing the investigator to abandon this line of questioning. Investigator Vera testified that J.F. pleaded not to let Gonzalez near him.

¶ 20    Felipe testified that nothing unusual happened when he took J.F. to get his haircut and that he never hurt his son during the haircut. Felipe went on to say that prior to taking J.F. to the barbershop, he noticed that his son had four dark linear marks on his back and that the marks looked as though they were made by fingerprints. J.F. told Felipe that Gonzalez had caused the marks and that his mother had put cream on the marks to make them unnoticeable. J.F. told Felipe that Gonzalez punished him by putting him against the wall and spanking him. J.F. pleaded with Felipe not to say anything because he "didn't want any trouble." Felipe further testified that J.F. was afraid and was crying and shaking because at the time, he was still living with Musto and Gonzalez. Felipe agreed not to say anything because he did not want to create any problems and was waiting for things to reach a "certain level." When Felipe saw J.F. again, he observed the bruises on the child's thighs. J.F. told Felipe that Gonzalez caused the bruises and again asked his father not to say anything so as "not to make a big problem."

¶ 21  Thereafter, based on J.F.'s statements and Detective Terry's information about the security video from the barbershop, DCFS unfounded the allegations of child abuse against Felipe. DCFS investigators Sandoval and Vera determined that there was credible evidence to believe that Gonzalez caused the bruises to J.F. As a result, they recommended that Gonzalez be indicated for child abuse of J.F. under allegation No. 11 of appendix B of DCFS's regulations, for "Cuts, Bruises, Welts, Abrasions and Oral Injuries." 89 Ill. Adm. Code § 300, appendix B (Allegation 11) (2010). The ALJ admitted a copy of the DCFS's investigation report into evidence, which tracked the information provided by DCFS investigator Vera and Detective Terry.

¶ 22  Gonzalez presented the testimony of two of his friends, Luis Figueroa, and Eloise Hayes. Figueroa testified that on the evening after J.F. returned from getting his haircut, Gonzalez and J.F. came to his house for dinner. Figueroa testified that his mother questioned why J.F. was eating so much after he ate two bowls of stew. According to Figueroa, J.F. responded that he was hungry because he had not eaten. Figueroa testified that shortly after Gonzalez and J.F. left his house, Gonzalez called and told him that he and Musto had found bruises on J.F.'s head and thighs and that they were taking the boy to see a doctor. Figueroa testified that he did not see any bruises on J.F. when the child was at his house because the boy was wearing long pants, long sleeves, and a baseball cap.

¶ 23  Figueroa testified that a few days later, Gonzalez and Musto brought J.F. back over to his house. Gonzalez and Musto instructed J.F. to tell Figueroa what happened when he got his haircut. According to Figueroa, J.F. told him that Felipe caused the bruises by holding him down during his haircut. Figueroa testified that in his opinion, Gonzalez would not harm J.F., and that it would not make sense for Gonzalez to report the abuse and then take the boy to the hospital if he had abused the child.

¶ 24    Hayes testified that she once saw Felipe physically abuse J.F. As for the bruises, she testified that Musto told her about Felipe bruising J.F. Hayes added that she never actually saw any bruises on J.F. or personally spoke with the child about the bruises.

¶ 25    Gonzalez then tendered a number of exhibits, eight of which were admitted into evidence: (1) letters and documents from J.F.'s doctors; (2) documents from the child's school; (3) a letter dated April 7, 2015, from a nutritionist at the Cicero Health Center of Cook County attesting that J.F. received care there until he was five years old; (4) a letter dated March 14, 2013, attesting that a doctor in private practice was J.F.'s primary care provider; (5) reports from the Berwyn Police Department detailing its investigation of the child abuse allegations made against Felipe; (6) Town of Cicero response to a subpoena stating it had no documents from the Berwyn Police Department regarding its investigation of Felipe; (7) proof of mailing of unidentified documents to the ALJ; and (8) a drawing allegedly made by J.F. referring to Felipe as a "bad dad."

¶ 26    Gonzalez testified on his own behalf. He denied abusing J.F. He argued that the administrative proceedings were corrupt. Gonzalez concluded his testimony by maintaining that there was a conspiracy against him.

¶ 27                    A. Recommendation of the Administrative Law Judge

¶ 28    On March 28, 2016, the ALJ issued her recommendation and opinion to the DCFS director. The ALJ determined that the testimony presented at the administrative hearing established, by a preponderance of the evidence, that J.F. was an "abused child" as that term is defined in section 3 of the Abused and Neglected Child Reporting Act (ANCRA) (325 ILCS 5/3(e) (West 2014)). In support of this determination, the ALJ considered the following factors: "[J.F.] was 6 years old at the time of the incident, [he] had bruises on his legs, and told the Investigator that the bruises were

caused by [Gonzalez]. [J.F.] was an 'abused child' because [Gonzalez] inflicted excessive corporal punishment."

¶ 29    The ALJ concluded that the preponderance of the evidence supported the indicated finding of child abuse entered against Gonzalez under allegation No. 11 of appendix B of DCFS's regulations, for "Cuts, Bruises, Welts, Abrasions and Oral Injuries." 89 Ill. Adm. Code § 300, appendix B (Allegation 11). The ALJ recommended that the director deny Gonzalez's request to expunge the indicated finding of child abuse against him entered into the state central register.

¶ 30                              B. DCFS Director's Final Decision

¶ 31    On April 7, 2016, the DCFS director issued his final administrative decision adopting and incorporating the ALJ's recommendation and opinion. Accordingly, the director denied Gonzalez's request to expunge the indicated finding of child abuse from the state central register.

¶ 32                              C. The Circuit Court Decision

¶ 33    On May 11, 2016, Gonzalez filed a *pro se* complaint for administrative review in the circuit court of Cook County challenging the final administrative decision. DCFS filed its answer, consisting of the administrative record, under seal.

¶ 34    On December 12, 2017, Gonzalez filed a *pro se* 83-page memorandum of law in support of his *pro se* complaint for administrative review. In the memorandum, Gonzalez attached numerous documents that were never admitted into evidence at the administrative proceedings and were not included in the answer in administrative review. Some of these documents concerned: alleged child abuse that pre-dated the October 2013 bruises; divorce and custody proceedings between Musto and Felipe; J.F.'s attendance at school; and an allegation that someone attempted to cut the brakes on Gonzalez's truck. Gonzalez also requested several kinds of relief, including that: Musto be granted full custody of J.F.; J.F. be allowed to testify in court; Felipe be arrested

for child abuse; he be allowed to file a claim for damages for attempted murder of himself and Musto for cutting the brakes on his truck; an indemnification of $70,000 against "all those involved in this crime of the state;" and a witness protection order.

¶ 35    DCFS moved to strike the portions of Gonzalez's pleadings that contained the administrative record which had been filed under seal, as well as the newly tendered documents that were not admitted into evidence during the administrative proceedings. On March 26, 2018, the circuit court granted the motion to strike, stating that it would "not consider any information contained in [Gonzalez's] memorandum that was not introduced into evidence at the Administrative Hearing."

¶ 36    The DCFS director filed a memorandum of law in support of the final administrative decision. The director contended that the preponderance of the evidence showed that Gonzalez caused J.F.'s bruises and the decision was neither against the manifest weight of the evidence not clearly erroneous. The director also argued that the circuit court should uphold its previous ruling that it would not consider any information or documents that were not introduced into evidence at the administrative hearing.

¶ 37    On September 6, 2018, the circuit court entered an order affirming the DCFS director's final administrative decision denying Gonzalez's request to expunge the indicated finding of child abuse against him. The circuit court determined that the director's decision was not against the manifest weight of the evidence.

¶ 38    Gonzalez moved *pro se* for reconsideration, which the circuit court denied in an order entered February 20, 2019. Gonzalez timely filed his *pro se* notice of appeal on March 22, 2019.

¶ 39                                III. ANALYSIS

¶ 40    Gonzalez raises several issues for review. However, the only dispositive issue on appeal is

whether the ALJ erred in denying his request to expunge the indicated finding of child abuse entered against him.

¶ 41    Before we reach the merits of this case, we note that Gonzalez's *pro se* brief and attached appendix to this court contain documents that were not introduced into evidence at the administrative proceedings. On administrative review, neither this court nor the circuit court can consider evidence that was not before the administrative agency. See section 3-110 of the administrative review law (735 ILCS 5/3-110 (West 2014)), which provides that "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court[;]" see also *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004) (citing section 3-110 for the proposition that "[c]ourts cannot consider evidence outside of the record of the administrative appeal.") Therefore, we will not consider the extra-record documents in our analysis.

¶ 42                                      A. Standard of Review

¶ 43    In administrative cases, this court reviews the final decision of the agency, not the judgment of the circuit court. *M.D. v. Department of Children & Family Services*, 2015 IL App (1st) 133901, ¶ 92. The appropriate standard of review depends upon whether the question presented is one of law, one of fact, or a mixed question of law and fact. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 44    The agency's interpretation of its own regulations or a statute is a question of law that is reviewed *de novo*. *Id*; *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006). An agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct. *Cinkus*, 228 Ill. 2d at 210. Consequently, we review factual questions under the

manifest weight of the evidence standard, overturning those findings only if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or not based on the evidence. *Campbell v. Department of Personnel, Secretary of State*, 2013 IL App (4th) 120610, ¶ 29. We review mixed questions of fact and law by asking whether the agency's decision is clearly erroneous. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). An agency's decision is clearly erroneous if, after reviewing the entire record, this court is "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted) *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 337 (2009).

¶ 45    In this case, the ALJ's finding that Gonzalez caused the bruises on J.F.'s thighs is a question of fact, reviewable under the manifest weight of the evidence standard. The ALJ's ultimate finding that Gonzalez committed child abuse by bruising J.F. as defined in the Abused and Neglected Child Reporting Act (ANCRA) and under allegation of harm No. 11, involves a determination of whether the facts satisfy the legal standard, which is a mixed question of law and fact reviewed for clear error. See, *e.g., Perez v. Illinois Concealed Carry Licensing Review Board*, 2016 IL App (1st) 152087, ¶ 16 ("[a] mixed question of law and fact asks the legal effect of a given set of facts").

¶ 46                    B. The Abused and Neglected Child Reporting Act (ANCRA)

¶ 47    The ANCRA requires DCFS to maintain a central register of all cases of suspected child abuse or neglect. 325 ILCS 5/7.7 (West 2012); *Plowman v. Department of Children & Family Services*, 2017 IL App (1st) 160860, ¶ 14; *M.D.*, 2015 IL App (1st) 133901, ¶ 96. DCFS operates a 24-hour telephone hotline for persons to report suspected child abuse or neglect. *L.F. v. Department of Children & Family Services*, 2015 IL App (2d) 131037, ¶ 43. DCFS investigates all reports of suspected child abuse or neglect and classifies them as "indicated," "unfounded," or "underdetermined," and reports that information to the register. 325 ILCS 5/7.12, 7.14 (West

2012).

¶ 48    A report is "indicated" when an investigation determines that credible evidence of the alleged abuse or neglect exists. 325 ILCS 5/3 (West 2012). Credible evidence of child abuse or neglect "means that the available facts, when viewed in light of surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected." 89 Ill. Adm. Code § 300.20, amended at 35 Ill. Reg. 1599 (eff. Jan. 15, 2011).

¶ 49    Relevant here, section 3 of the ANCRA defines an "abused child" as one "whose parent or *** any person responsible for the child's welfare or any individual residing in the same home as the child, or a paramour of the child's parent[,]" "inflicts excessive corporal punishment" on the child. 325 ILCS 5/3(e) (West 2012); see also 89 Ill. Adm. Code §§ 300.20, 336.20. At issue in this case is an indicated report alleging harm under No. 11 for cuts, bruises, welts, abrasions, and oral injuries. 89 Ill. Adm. Code § 300, appendix B (Allegation 11).

¶ 50    In the appendix, a bruise is defined as "an injury that results in bleeding under the skin, in which the skin is discolored but not broken. A bruise is also referred to as a contusion." The appendix goes on to state that not every bruise constitutes an allegation of harm.

¶ 51    The appendix lists the following factors that should be considered when determining whether an injury that resulted in a bruise constitutes an allegation of harm: (1) the child's age, mobility and developmental stage; (2) the child's medical condition, behavioral, mental, or emotional problems, developmental disability, or physical handicap, particularly as they relate to the child's ability to seek help; (3) the severity/extent of the bruises (size, number, depth, extent of discoloration). Some bruises may fade quickly, such as around a young child's mouth, but still be considered serious if the type of bruise (e.g., fingerprint marks) suggest intentionality; (4) the location of the bruises. Bruises located on padded areas such the buttocks, cheeks, genitals, or on

relatively protected areas like the ear lobes, neck or upper lip, or on soft areas such as the stomach are highly suspicious; (6) the pattern of injury; (7) whether the injury was caused by an instrument used on the child; and (8) previous history of indicated abuse or neglect, or history of previous injuries. 89 Ill. Adm. Code § 300, appendix B (Allegation 11/61).

¶ 52    In this case, DCFS correctly applied these factors in concluding that Gonzalez caused the bruises to J.F. For example, Dr. Grasso-Knight observed a small ovular bruise on J.F.'s forehead and small bruises on the child's upper thighs. The doctor noted that the coloring of the bruises indicated they were recent bruises. When Detective Terry observed the bruises on J.F.' s thigh, she noted that pattern of the bruises looked like fingerprint marks. The detective further noted that when Gonzalez placed his hands on J.F.'s thighs to demonstrate how he claimed Felipe had held the child down in the barber chair during the haircut, his fingers matched the outline of the bruises.

¶ 53    In addition, the bruises were located on a padded area of J.F.'s body, his thigh, which made the bruises suspicious. Moreover, J.F.'s own statements established that Gonzalez caused the bruises. J.F. told DCFS investigator Vera that he originally lied about Felipe hurting him because Gonzalez had threatened him. J.F. told investigator Vera that Gonzalez caused the bruises to his thigh.

¶ 54    Felipe testified that prior to taking J.F. to the barbershop, he noticed that his son had four dark linear marks on his back which looked as though they were made by fingerprints. J.F. told Felipe that Gonzalez had caused the marks and that his mother had put cream on the marks to make them unnoticeable. Felipe's testimony suggested a pattern and previous history of abuse and injuries.

¶ 55    The ALJ found that DCFS investigator Vera and Detective Terry provided credible testimony and that Gonzalez and Musto were not credible. The ALJ determined that although

Figueroa and Hayes provided credible testimony, neither of them observed J.F.'s bruises or had first-hand knowledge of the events in question.

¶ 56     The ALJ found that the preponderance of the evidence supported the indicated finding of child abuse entered against Gonzalez under allegation No. 11 of appendix B of DCFS's regulations, for "Cuts, Bruises, Welts, Abrasions and Oral Injuries." 89 Ill. Adm. Code § 300, appendix B (Allegation 11). Upon review of the record, we cannot say that the ALJ's findings, adopted by the director, were against the manifest weight of the evidence. Nor can we say that the director's determination that those findings constituted child abuse was clearly erroneous.

¶ 57     Gonzalez raises several additional arguments, none of which warrant reversing the DCFS director's final administrative decision denying his request to expunge the indicated finding of child abuse against him entered into the state central register.

¶ 58     First, Gonzalez argues that the DCFS director erred by accepting the ALJ's recommendation because the ALJ accepted "hearsay as evidence to make the final" decision. We must disagree. Hearsay statements are generally admissible in administrative proceedings where the declarant is a child who has been abused or neglected. See, *e.g.*, *Montalbano v. Illinois Department of Children & Family Services*, 343 Ill. App. 3d 471, 479 (2003) ("the ALJ is permitted to rely on hearsay in reaching a decision, although such evidence would not be admissible under the rules of evidence")

¶ 59     Next, Gonzalez next argues that the ALJ "never ask[ed for] or accept[ed] physical evidence from [ ] either party." This is of no consequence because a DCFS director can refuse to expunge an indicated finding of child abuse, based solely on witness testimony, physical evidence is not required. See, *e.g.*, *M.D.*, 2015 IL App (1st) 133901, ¶¶ 104-06 (affirming director's refusal to expunge indicated finding based solely on witness testimony).

¶ 60    Finally, Gonzalez contends that the ALJ erred by "[n]ot conducting a good [investigation] and prolonged [his] case[,] which provoked an attempt on [his] wife's life, [his c]hild's life and [his own] life." This contention is meritless because the ALJ is not charged with conducting an investigation, but rather with reviewing DCFS's decision to indicate a finding of abuse or neglect after an evidentiary hearing such that the evidence supports the indicated finding. See 325 ILCS 5/7.16 (West 2012); 89 Ill. Adm. Code § 336.115(c)(2).

¶ 61                                         IV. CONCLUSION

¶ 62    For the foregoing reasons, we conclude that the DCFS director's ruling denying Gonzalez's request to expunge the indicated finding of child abuse against him entered into the state central register, was neither against the manifest weight of the evidence nor clearly erroneous. Accordingly, we affirm the order of the circuit court upholding the decision of the DCFS director.

¶ 63    Affirmed.